FRANK A. THOMPSON, Appellant, *v.* GEORGE W. BAILY et al., Composing the Firm of BAILY & MONTGOMERY, Respondents.

Stockbrokers — purchase of stocks upon a margin — validity and effect of printed notice sent by stockbrokers that customer's purchase of stock would be sold without notice if margin should be exhausted — when terms of such notice received and retained by customer does not become part of contract between customer and brokers.

1. In the absence of agreement to the contrary, a purchase upon margin charges a broker with the duty to carry the thing purchased for his customer until additional margin has been demanded and refused. If some other agreement is made the broker has the burden of proving it.

2. The defendants are cotton brokers and members of the New York Cotton Exchange. The plaintiff, who is their customer, resid-

ing in Wilmington, North Carolina, gave an order to the defendants' agent at that place for the sale of 100 bales of cotton on a margin. He made inquiry from defendants' agent concerning the terms on which the defendants did business and was told that when they required additional margin they called on their customer for it. Defendants acknowledged receipt of the order and the margin, and stated that they inclosed confirmation of the sale, which was on a printed form. It states the execution of the order and ends as follows: "It is further understood that on all marginal business the right is reserved to close transactions at our discretion without further notice when margins are running out." A few days afterwards the transaction was closed. A month later the plaintiff telegraphed to the defendants to buy 100 bales of cotton. The defendants on the same day wrote the plaintiff that the new order had been executed, and inclosed a notice of confirmation, reserving the right to close the transaction at their discretion without further notice when margins were running out. On the day following there was a panic in the cotton market and plaintiff was sold out. *Held*, that the previous transaction, standing by itself, did not prove a course of dealing, nor, as matter of law, that the later transactions would be subject to the terms stated in the notice of confirmation. Therefore, the terms of the notice did not become as a matter of law a constituent of the contract. A jury could, therefore, find that the later order was given in the belief that the defendants would assume the usual duty of a broker to close the transaction upon notice. Hence, the nonsuit was erroneously granted.

*Thompson* v. *Baily*, 163 App. Div. 896, reversed.

(Submitted March 23, 1917; decided April 24, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 11, 1914, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Wendell P. McKown* for appellant. The plaintiff and the defendants should be treated as pledgor and pledgee and it cannot be said that as a matter of law the plain-

tiff had agreed that the defendants might sell out his contract without notice to him. Therefore, the court erred in dismissing the complaint but should have submitted to the jury the question whether the plaintiff, the pledgor, had agreed that the contract might be sold without notice to him. (*Smith* v. *Craig*, 211 N. Y. 456; *Keller* v. *Halsey*, 202 N.Y. 588.) Immediately upon the sale of the cotton the plaintiff's cause of action arose and was complete. Subsequent offers to " reinstate " the plaintiff, if any had been made, would not have affected the plaintiff's cause of action, there being no claim or evidence that the plaintiff accepted any such offer. (*Thompson* v. *Baily*, N. Y. L. J., Oct. 26, 1910; *Taussig* v. *Hart*, 58 N. Y. 425; *McIntyre* v. *Whitney*, 139 App. Div. 557; 201 N. Y. 526.)

*John R. Abney* for respondents. The court was warranted in granting a nonsuit. (*Tower* v. *Meeker*, 25 N. Y. 361; *Clews* v. *Jamieson*, 182 U. S. 461; *Hoyt* v. *Thompson*, 19 N. Y. 207; *Violett* v. *Horbach*, 119 App. Div. 373; *Hanks* v. *Drake*, 49 Barb. 186; *Brooks* v. *American Express Co.*, 14 Hun, 364; *Cohnfeld* v. *Walsh,* 2 App. Div. 191; *Brown* v. *Cook*, 9 Johns. 361; Story on Agency, § 239; *Smith* v. *Cologan*, 2 T. R. 188; *Towle* v. *Stevenson*, 1 Johns. Cas. 110.) The proofs do not establish a cause of action alleged in the complaint. (*Vassar* v. *Camp*, 11 N. Y. 441; *Wester* v. *Cassin*, 206 N. Y. 506; *Robinson* v. *Crawford*, 31 App. Div. 228; *Horton* v. *Morgan*, 19 N. Y. 170; *Wicks* v. *Hatch*, 62 N. Y. 535; *Armstrong* v. *Bickel*, 217 Penn. St. 173; *Cameron* v. *Durkheim*, 55 N. Y. 425; *Quinlan* v. *P. W. I. Co.*, 123 N. Y. 356; *N. Y. L. Ins. Co.* v. *Fletcher*, 117 U. S. 519.)

CARDOZO, J. The defendants are cotton brokers and members of the New York Cotton Exchange. The plaintiff is their customer. He resides in Wilmington, North Carolina. His dealings with the defendants began on

December 14, 1909. On that day he gave an order to one Carmichael, the defendants' agent in Wilmington. The order was for the sale of 100 bales of October cotton. At the same time he gave Carmichael $400 for margin. He made inquiry concerning the terms on which the defendants did business. He was told that when they required additional margin, they called on their customer for it. The next day the plaintiff received in Wilmington a letter from the defendants in New York. They acknowledged receipt of the order and the margin, and stated that they inclosed confirmation of the sale. The notice of confirmation is a printed form. It states the execution of the order, and ends as follows: "It is further understood that on all marginal business, the right is reserved to close transactions at our discretion without further notice when margins are running out. Very respectfully, Baily & Montgomery." The plaintiff does not deny that he read this notice. Writing to the defendants a few days later, he said, "Your favor of the 14th inst. is at hand and noted." On December 28, 1909, the defendants asked him for additional margin of $200, which he sent them. On January 10, 1910, the transaction was closed at his request. It was closed at a profit. The plaintiff then had $640 remaining in the defendants' hands.

It is in connection with the next transaction that controversy has arisen. On January 12, 1910, the plaintiff in Wilmington telegraphed to the defendants in New York to buy 100 bales of March cotton. He offered Carmichael $400 margin, for he supposed that the proceeds of the first sale had been sent to him. He was told, however, that the defendants still held the proceeds, and that no other payment was then necessary. The defendants on the same day wrote the plaintiff that the new order had been executed, and inclosed a notice of confirmation, reserving the right to close the transaction at their discretion without further notice when margins were run-

ning out. This notice reached the plaintiff on January 13. He does not deny that he read it. On the following day, January 14, there was a panic in the cotton market. The defendants at 2:35 P. M. telegraphed Carmichael: "Get 300 Thompson, answer. Market in panic." It was 2:58 P. M. before this telegram was received. Carmichael notified the plaintiff, who had an adjoining office. The plaintiff responded at once, and promised to send $300 that evening. Carmichael said that this would be satisfactory. At 3:12 P. M. he telegraphed the defendants: "Thompson will send check by to-night's mail for $300." In the meantime the plaintiff's cotton had already been sold. The price of cotton was going lower and lower; and while their telegram demanding margin was still on its way to Wilmington, the defendants closed the transaction. They telegraphed Carmichael at 2:56 P. M. that they had sold the cotton at 13.59 cents per pound. In fact, they had sold it at 13.50. The telegram reached Carmichael at 3:22 P. M., and at once he notified the plaintiff. On January 17 the plaintiff wrote to the defendants that the sale was unauthorized. On January 18 the defendants telegraphed Carmichael that March cotton was at 13.55, and told him "to notify Thompson." He did so, and suggested that the defendants would buy the cotton back if Thompson would send them some more margin. The suggestion was not accepted. On January 14 and January 22 the the price of March cotton rose to 14.50, and a few days later it was still higher. The plaintiff again made protest to the defendants, and, failing to obtain redress, began this action. At the close of the evidence his complaint was dismissed.

The defendants say that the plaintiff must be held as a matter of law to have agreed that his cotton might be sold without notice whenever margins were running out. We do not share that view. In the absence of agreement to the contrary, a purchase upon margin charges a

broker with the duty to carry the thing purchased for his customer until additional margin has been demanded and refused (*Markham* v. *Jaudon*, 41 N. Y. 235; *Richardson* v. *Shaw*, 209 U. S. 365). If some other agreement was made, the defendants have the burden of proving it. They claim to have proved it in two ways: first, by the notice which they gave the plaintiff after they filled his order in December, and again by the notice which they gave him after they bought the cotton in controversy. Whether the effect of these notices was to make out a new contract was a question for the jury. The plaintiff's assent is not so clearly proved as to make a question for the court.

The previous transaction, standing by itself, did not prove a course of dealing. It did not prove, as a matter of law, that later transactions would be subject to the terms stated in the notice of confirmation (*Smith* v. *Craig*, 211 N. Y. 456, 464). It left the terms equivocal, for the notice of the reservation of a right to sell at discretion may have been nullified in the plaintiff's mind by the statement of the defendants' agent that margin would be asked for if required. The perfunctory warnings of a printed blank express at the utmost the defendants' general practice. They will readily yield to other and more specific statements of the practice to be followed in dealings with a particular customer (*Clark* v. *Woodruff*, 83 N. Y. 518, 523). The lines of the contract are not so sharply defined that the court is free to trace them unaided by a jury. The defendants did not ask the plaintiff in so many words to assent to their reservation of extraordinary powers. They left his assent to be inferred from his receipt of printed forms, which belied the assurance already given by their agent. In such a situation we cannot say, even as to the first transaction, that the terms of the notice became as a matter of law a constituent of the contract. Still less can we say that they became a constituent of other and later dealings.

That depends upon the intention of the parties which must be gathered from all the circumstances (*Smith* v. *Craig, supra ; Keller* v. *Halsey,* 202 N. Y. 588, 597).

A jury could, therefore, find that the order of January 12 was given in the belief that the defendants would assume the usual duty of a broker to close the transaction upon notice. The defendants filled the order, accepted the plaintiff's margin, and held the cotton as his property. They could not shake off the duties implied by law except by some new agreement. To make out that agreement they refer us to the notice of January 12 which reached the plaintiff on January 13. But that notice until assented to by the plaintiff did not constitute a contract. At the utmost it was a proposal to enter into a contract. Viewed most favorably to the defendants, it was a statement to the plaintiff of the terms on which the defendants were willing to continue to carry his cotton. Its significance even for that purpose must be estimated in the light of the earlier transaction. But to say that the plaintiff understood it as a new offer is not to say that there was a new contract. He had a reasonable time within which to make up his mind whether he would accept the offer or reject it. If he rejected it, the defendants even then would not have been at liberty to close the transaction without reasonable demand that he take up the cotton, or without notice of the time and place of sale in the event of his default (*Richardson* v. *Shaw, supra ; Skiff* v. *Stoddard,* 63 Conn. 198). Silence after a reasonable time had passed might be deemed the equivalent of assent, but assent in some form there must have been if the sale is to be upheld. In this case we cannot say as a matter of law that the plaintiff had unreasonably delayed in rejecting the defendants' terms. The confirmation notice with its attempted reservation of a right to sell at discretion reached him on January 13, and in less than a day thereafter the sale was made. We think the case was for the jury.

There is nothing in the point that the plaintiff should have bought back the cotton on January 18, sent more margin to the defendants, and traded with them again. He was not bound to renew his dealings with delinquent brokers. By that time, moreover, there had been an intermediate advance in prices, and the right to recover damages had already accrued.

The judgment should be reversed and a new trial granted with costs to abide the event.

HISCOCK, Ch. J., CHASE, COLLIN, HOGAN, McLAUGHLIN and CRANE, JJ., concur.

Judgment reversed, etc.