LAWRENCE F. HEAPHY, Appellant, *v.* ROBERT B. KERR and LOUIS KERR, Respondents.

First Department, February 6, 1920.

Principal and agent — repledge of securities by stockbrokers for their own account without consent of customer — bankruptcy — claim founded upon such conversion by stockbrokers survives discharge in bankruptcy — when no implied consent by customer to repledge by brokers — statement of right to repledge contained in small type on reports rendered — ambiguous statement on reports — new trial.

Since the addition to the Penal Law of section 956 making it a felony for a stockbroker wrongfully to repledge the stock of a customer, or to repledge the same for an amount in excess of the amount owing to the broker by the customer without the customer's consent, such act by a broker must be deemed a willful and malicious injury to property within the meaning of the Bankruptcy Act and the claim for stock so wrongfully repledged survives the discharge of the broker in bankruptcy.

Where the customer specifically testifies that he never consented to such repledge by the broker, but on the contrary ordered the broker not to repledge the securities, he will not be held to be bound by an implied consent merely because reports rendered to him by the broker contained at the end thereof in small type a statement that it was mutually agreed that " all securities deposited for the protection of your account may be pledged by us as collateral to our own loans," there being no proof that the customer read such statement.

Such documents being mere reports, the customer was under no legal obligation to read them and there can be no implied consent to the making of a new contract by reason of his failure to express dissent therefrom.

Moreover, such statement on the reports may be construed to mean only that the brokers were entitled to repledge the stock in connection with their own loans made in connection with transactions for the customer.

The Appellate Division cannot direct a verdict for the plaintiff where he did not ask the trial court for a directed verdict, but must grant a new trial.

APPEAL by the plaintiff, Lawrence F. Heaphy, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 24th day of June, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on or about the same day denying plaintiff's motion for a new trial made upon the minutes.

*Richmond J. Reese,* for the appellant.

*James N. Rosenberg* of counsel [*Satterlee, Canfield & Stone,* attorneys], for the respondents.

SMITH, J.:

The defendants were stockbrokers doing business as Kerr & Company in the city of New York. The plaintiff was their customer, purchasing stocks through them upon margin. He deposited as security for his liability, with the brokers, fifty shares of the corporate stock of the Westinghouse Electric and Manufacturing Company. Thereafter the defendants had bought for him twenty shares of the stock of the same company. Upon the 18th day of January, 1918, there was owing upon a balance to the said brokers $709.35. This he offered to the attorneys for the defendants and demanded the return of the stock, which was refused. It was stipulated that the tender to the attorneys was accepted as a tender to the defendants themselves that Kerr & Company had repledged all of this stock held as security for plaintiff's indebtedness to the firm for an amount largely in excess of the plaintiff's indebtedness; that the said stock had been sold by the said pledgee and the defendants had gone into bankruptcy. This action is brought upon the claim that the conversion of this stock by this unauthorized repledge was a willful and malicious injury to property and survives the discharge in bankruptcy. All of these transactions have occurred since section 956 was added to the Penal Law by chapter 500 of the Laws of 1913, which makes a felony the wrongful repledge of stock of a customer, or a repledge for an amount in excess of the amount owing to the broker by the customer, without the customer's consent. The latest exposition of the law in the Court of Appeals is found in the opinion of *Wood* v. *Fisk* (215 N. Y. 233). In that case there was an unauthorized repledge of the stock of a customer which was held to be a conversion, but, nevertheless, it was held under the Bankruptcy Act that such a conversion was not such a willful and malicious injury to property as to be excluded from the provable debts, but that case arose prior to the enactment of this penal statute, and Judge CARDOZO, at the end of his opinion, says: "We think the misuse of the plaintiff's securities is

not to be classified as a willful and malicious injury within the meaning of that statute [speaking of the Bankruptcy Act]. * * * The repledge, unlike a sale, left the general property in the plaintiff; it gave rise, until followed by bankruptcy, to nominal damages only; and so far as there was any willful conversion, it was, therefore, partial and technical rather than absolute and malicious. Whether this would be true to-day, since the enactment of recent statutes under which the wrongful repledge of securities by stockholders is made a felony (Penal Law, section 956; L. 1913, ch. 500), we do not now decide. The rights of the parties must be adjudged according to the law as it stood when the wrong was done." This claim, therefore, would not survive the discharge in bankruptcy except for the passage of this act. In speaking of what constitutes a willful and malicious injury to property, Judge CARDOZO says: " We held in *Kavanaugh* v. *McIntyre* (128 App. Div. 722; 210 N. Y. 175), and again in *Andrews* v. *Dresser* (214 N. Y. 671), that there may be acts of conversion so wanton as to be included in that exception. Those were cases where the charge of conversion was equivalent to a charge of larceny." Applying analogous reasoning to the case at bar, the Legislature had deemed a wrongful repledge of securities by brokers so gross an injury as to make it not a misdemeanor, but a felony, and when in defiance of that statute, as well as in defiance of the legal rights of the plaintiff these securities were repledged for an amount largely in excess of the plaintiff's indebtedness to the defendants, we think that the wrong may fairly be deemed a willful and malicious injury to property, the claim for which is not discharged by the decree in bankruptcy.

The defendants insist, however, that this repledge was by the consent of the plaintiff. In this case the evidence of the plaintiff was in no way contradicted by any evidence from the defendants. The plaintiff swears to explicit instruction not to repledge his property. He swears again later during the pendency of his transactions with the defendants of his notification to the manager of one of the branch houses that his securities must not be pledged. His consent is not claimed to have been given specifically. It was not sworn to by any one. The only evidence which is claimed to support

defendants' contention is found in the reports made by the defendants to plaintiff of purchases made by the defendants for the plaintiff in the course of these transactions. Upon each one of these reports the main part of the report is in large type. Upon the bottom of the report in smaller type appears the following: " It is hereby mutually understood and agreed, waiving all notice, that the sale or purchase of all stocks, bonds, securities or contracts in your account, at public or private sale, is authorized, when such sale or purchase is deemed necessary by us for our protection, and that all securities deposited for the protection of your account may be pledged by us as collateral to our own loans. Yours Respectfully, Kerr & Company." Now, the learned court charged the jury that if the plaintiff read these notices, *or if he should have read them*, by failing to dissent, he gave the consent required by the statute to authorize the repledging of these securities. The plaintiff swears that he never read these notices or knew what they contained. We are referred to no cases and I have been able to find none where in a notice of a purchase by a stockbroker there can be included in smaller type a new contract which will be deemed impliedly agreed to if a dissent be not expressed. The cases have held that in a proposed contract, matter expressed in smaller type and in an insignificant space must be read by the party executing it. He has a duty to read carefully before executing the contract. But that is because he is then making his contract. Here he was merely receiving notices of purchases by the brokers. He was making no contract and signed nothing. No one has reason to expect that in the mere notice of the purchase of stock the broker is inveigling him into some further contract as to rights in collateral which he would not otherwise possess. It is not unnatural for a busy man to take up that report and read the matter of the purchase and not to read the matter in small print at the bottom of the notice. With proof positive that he did not read them, and with no legal obligation to read them, there can be no implied consent to the making of a new contract by reason of his failure to express dissent therefrom. The more honorable dealing would be to procure a written consent, or at least an express consent, if it were intended to claim the right to repledge these securities for their own debts. The

attempt to procure an implied consent by reason of such notices attached to their notice of purchase of stock is not to be commended by courts as a matter of upright dealing.   Again, if an implied consent may be deemed sufficient, that implied consent must be upon facts that leave no mistake that the party against whom the consent is implied intended to give it. While this notice, critically read, would probably be interpreted to consent to the repledge of securities for the general debts of the broker, it might easily be interpreted by those less trained in the law to refer only to such pledges as might be necessary to obtain the moneys by the brokers for the carrying of the customer's account, and the words " our own loans," when read in connection with the rest of the notice, might be interpreted as being " our own loans made necessary for the purpose of carrying the customer's account." That this notice is not so clear that one who runs may read, is shown by the fact that the jury, after having these papers before them in the jury room, and through the trial, came back to the court and asked the proper interpretation of the words there used. In my opinion, as matter of law, the contract there claimed is not so plainly expressed as to authorize any implication of a consent to the repledging of the customer's securities for the general loans of the brokerage firm.

A new trial must be granted because the plaintiff did not ask for a directed verdict.   If he had, we could direct a verdict for the plaintiff.   The exceptions are sufficient to raise this question on appeal.   The judgment and order should, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.   The holding that plaintiff consented to this repledge of securities is reversed.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to appellant to abide event.