PETER R. KUHN, Plaintiff, *v.* MURRAY SIMONS and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, Fourth District, January 25, 1932.

*Rosenblatt & Tachna* [*Max Tachna* of counsel], for the plaintiff.

*I. Gainsburg* [*Seymour B. Liebman* of counsel], for the defendants.

CHILVERS, J. The plaintiff carried a marginal account with the defendant stockbrokers. Among the securities purchased and held by them on order and for account of the plaintiff were 500 shares of Cable Radio stock. At about half-past nine on the

evening of June 18, 1930, they sent a telegram to the plaintiff, addressed to his place of business in Manhattan, instead of to his home, informing him that his account was undermargined $1,000 and that, unless check in this amount was received before the opening of the stock market the following morning, they would be forced to liquidate sufficient of his holdings " to properly margin " his account. The market opened at ten o'clock in the morning and, check not having been received, the defendants sold the Cable Radio shares within the next half hour. The plaintiff, claiming that the sale was unlawful, brings this action as for conversion.

Testimony on the part of the plaintiff indicates that the telegram was perhaps not received until after ten-thirty that morning. The defendants in turn have offered testimony tending to indicate that it was received at the plaintiff's office at about nine o'clock. In the view that I take of the situation here, it is unnecessary to determine just when that morning the telegram was received.

In the absence of special agreement, a stockbroker is not authorized to sell securities held on margin without giving the customer opportunity to make up for a depreciation in the market price of the securities thus held. This opportunity must be given to him by notice which is, under the circumstances, reasonable. (*Markham* v. *Jaudon*, 41 N. Y. 235.) No special agreement was made between these parties. A number of confirmation slips customarily mailed by the defendants to the plaintiff after the execution of respective orders of the plaintiff are in evidence, which carry, in small print, a statement to the effect that " the brokers may, whenever in their judgment it appears necessary for their protection and without any further notice to the customer, close out the customer's account or accounts, in whole or in part, by selling the securities therein held at public or private sale without any tender to the customer of the securities sold, or by buying at public or private sale any or all securities sold but not received from the customer for delivery." A confirmation on the execution of the specific order for the Cable Radio stock, if any was mailed, is not in evidence. The other confirmations indicate merely the general practice of the stockbroker, and cannot, in the light of definite facts relating to this particular transaction or this particular customer, govern the conduct in the specific case here. (*Thompson* v. *Baily*, 220 N. Y. 471.)

The plaintiff's account with these defendants frequently became undermargined. Numerous calls upon the plaintiff to put up more margin were made by the defendants. These were made by letter, quite a number of which are in evidence. Some of these letters

were evidently not heeded, because the letters disclose repetition of call for margin made frequently. The customary course of conduct between these parties specifically, therefore, indicates a variance from the general custom indicated by the printed notation on the confirmation slips. Calls for more margin were actually made, in spite of the printed authorization on the defendants' slips. When a call was not heeded by this plaintiff a further call was made. They were made nearly always by letter, one or two of them remonstrating with the plaintiff for his failure to comply with former calls. Even if the confirmation on the order for these Cable Radio shares contained that printed notation, which we do not know, and even if the agreement between those parties provided that the defendants could sell without notice, that proviso was waived by the repeated failure on the part of the defendants to take advantage of it. (*Toplitz* v. *Bauer*, 161 N. Y. 325.) It certainly could not be asserted to authorize a sale without notice after repeated instances of failure to act thereunder without giving the customer reasonable notice that the privilege originally afforded under the provision would be again availed of. (*Small* v. *Housman*, 208 N. Y. 115, 126.)

Notice, therefore, being necessary, the question is whether the telegram sent on the evening of June eighteenth, which, in ordinary course, arrived the following morning, was reasonable notice. Under the circumstances here disclosed, such notice was insufficient. The customer had been led to believe that when a call would be made, it could be met without such urgent speed as telegraphic communication indicates. He had also been led to believe that if the call was not seasonably answered, default would not be taken. A demand which, in ordinary course, would reach a customer at nine o'clock in the morning, to be complied with by payment of a substantial sum before ten o'clock, is, under the circumstances disclosed in this case, unreasonable. In *Godfrey* v. *Newman* (135 Misc. 764) I held that a customer could not take advantage of a bare statement made by a representative of the broker that his account would not be closed out without prior notice, when the broker was, by express agreement, authorized to sell without any notice. The attempt at waiver was not, under the circumstances there appearing, sufficient to vary the contract or the course of conduct. A waiver of a provision of an agreement, when not based upon consideration, is binding on the theory of estoppel. (*Pechner* v. *Phœnix Ins. Co.*, 65 N. Y. 195.) In that case the testimony indicated, and, in fact, judicial notice could be taken, that the market at the time, which was during the recent crash, was in very panicky condition, and that the customer could not, with

reason, place reliance upon a continuing *status quo* for any period. Nor had he done or refrained from doing anything by reason of such reliance. If the facts in the case before us now disclosed a panicky condition of the market, I might conclude that the short telegraphic notice was all that the plaintiff could, in reason, have expected. But no such facts are in evidence. There was nothing that could reasonably stir him from a security created by the defendants over an extended period.

The stock was sold on the morning of June nineteenth, which was a Thursday. Confirmation of the sale was mailed to the plaintiff. In fact, his secretary was informed on the telephone the same day that the stock had been sold. The following Tuesday letter of repudiation was sent by the plaintiff. The defendants say that waiting until Tuesday amounted to a ratification of the sale. It is true that unreasonable delay in a repudiation is some evidence of ratification, but ratification is not mere failure to repudiate. I am inclined to believe that there must be something additional, and not just the lapse of four or five days, including intervening Saturday and Sunday, without repudiation. There can be no ratification without an approval, expressed, or implied from the apparent attendant circumstances. (*Glenn* v. *Garth*, 133 N. Y. 18.)

On June twenty-third the defendants threatened to sell more of plaintiff's securities unless additional margin was given, and the plaintiff furnished such additional margin. This was not given by the plaintiff with a view of further continuance of trade. It was furnished solely for the protection of the account as it then stood. No further securities were bought or sold by these defendants for account of the plaintiff and very shortly thereafter the account was closed. There was no ratification.

The plaintiff is entitled to the difference between the market price of the stock at the time of the wrongful sale and the highest market value within a reasonable time thereafter. The highest market value at a reasonable time thereafter was stipulated on the trial. On this basis the plaintiff is entitled to $437.50, with interest from the day of the sale. The defendants have withheld from the plaintiff the usual commissions and tax on the sale, but the plaintiff is not entitled to recover this in this action, which is for conversion only, on which the measure is as above indicated. Judgment will, therefore, be entered for the plaintiff for $437.50, with interest from June 19, 1930.