**LAND OBEROESTERREICH v.
GUDE et al.**

No. 155.

Circuit Court of Appeals, Second Circuit.
Feb. 13, 1940.

David W. Kahn, of New York City (Wachtell, Manheim & Grouf and Nathan Siegel, all of New York City, on the brief), for plaintiff.

Karl T. Frederick, of New York City (A. Spotswood Campbell, of New York City, of counsel), for defendants.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This controversy has been long in our courts. We passed upon it at length in 2 Cir., 86 F.2d 621, certiorari denied 300 U. S. 663, 57 S.Ct. 493, 81 L.Ed. 871; then considered were many of the issues now brought before us again. Before turning to these issues, we must advert to a new problem, not present at the first trial. That problem is whether Land Oberoesterreich, the Province of Upper Austria, has the capacity to sue in a federal court.

The complaint, verified in 1932, alleges that the plaintiff was and is "one of the nine independent sovereign political subdivisions constituting the Government of the Republic of Austria." At the time of the first trial and the subsequent appeal, this was true. When the second trial began, in 1938, the government of the Republic of Austria had ceased to exist. The defendants offered a letter from our Department of State as proof of this fact, and then moved to dismiss the complaint.

■ The Constitution and the Judicial Code extend the judicial power to suits between a citizen of the United States and a foreign "state, citizen or subject." U.S. C.A. Const. Article III, § 2; 28 U.S.C.A. § 41. The state must first achieve recognition by our government, Russian Republic v. Cibrario, 235 N.Y. 255, 139 N.E. 259, but once recognized, the foreign sovereign, its subjects and its citizens, including its corporations, may be suitors in our courts. A right of action belonging to one sovereign will pass to its successor, if the successor has come to power in a manner acceptable to what our own government considers the principles of international law. The Sapphire, 11 Wall. 164, 78 U. S. 164, 20 L.Ed. 127.

The union of Austrian provinces was in many respects similar to our own federation of states. So long as Austria itself existed, the Province of Upper Austria had capacity to sue, either as a foreign state or as a citizen of a foreign state. Austria and its constitution have disappeared, and the physical area which knew as its governments the Province of Upper Austria and the Republic of Austria now knows as its sovereign the Third Reich of Germany. This change has occurred in a manner acceptable to our notions of. international law; the anschluss has in no wise been disavowed by the Department of State.

■ If the Province of Upper Austria had disappeared along with the Republic of Austria, plaintiff's capacity to sue would be placed in serious jeopardy. But the Province of Upper Austria has not disappeared. Evidence offered below shows that it continues to exist as a governmental department of Germany. Upper Austria's powers as a German political entity are somewhat different from its powers as an Austrian state, but these differences are immaterial here. The Third Reich is recognized by our government, and any of its creatures or members may sue in our courts. We approve the finding of the District Court that Land Oberoesterreich has capacity to prosecute this suit.

The facts of the controversy are fully set forth in 2 Cir., 86 F.2d 621; we will here summarize them only. The bonds in question were issued by the Province of Upper Austria, and were held mainly by American investors. They were quoted over the counter well below par, and as maturity approached the Province decided to acquire as many bonds as it could at the low market prices. It designated one Dr. Hans Alma as its purchasing agent for this purpose. Dr. Alma headed the financial concern of Alma & Co. of Vienna and New York. Alma opened a general trading account for his firm with the defendant co-partnership, which was ignorant of his connections with the Province. As security for his account he delivered to defendants a considerable number of Upper Austrian bonds, which defendants were justified in believing to be his own. Alma signed a margin card. Like most margin cards of 1931, this did not specifically authorize the broker to close out the customer without notice. The account was fairly active, and Alma & Co. received numerous confirmation slips, each of which did state that the defendants reserved the power to close out the account at any time, without advance notice. Alma also designated an employee, Volk, as agent with full authority to deal on his behalf with defendants. By March, 1932, the account had become undermargined and the defendants began to sell some Upper Austrian bonds. On March 12, defendants were notified by attorneys for the Province that the Province claimed to own the bonds. Defendants continued to dispose of Alma's collateral, often without notice to Alma, Volk, or the Province. They eventually covered themselves, and accumulated a credit balance in favor of Alma for $2,171.45. In addition, three of the bonds were never sold.

When the case was last before us, we held that on the evidence presented plaintiff was entitled to recover only the credit balance in favor of Alma and the three unsold bonds. Accordingly, we reversed a judgment in favor of plaintiff to the effect that all the pledged bonds had been converted, and ordered a new trial unless plaintiff would accept the smaller amount specified. Plaintiff refused to accept the reduction. At the new trial the District Court found for plaintiff in the exact

amount of the rejected judgment. Our former opinion could properly control our present decision; nevertheless we shall reexamine plaintiff's contentions in the light of its claims of evidence newly offered.

■ All questions of substance are governed by the law of New York. As we read that law, defendants were entitled to dispose of the bonds even though they had been notified by the Province of its claim. They were pledgees of negotiable bonds, in good faith and for value. They were privileged to stand on their contract of pledge. If they did not violate that contract, the Province cannot complain. We think, as before, that Thompson v. St. Nicholas Nat. Bank, 113 N.Y. 325, 21 N.E. 57, controls, and is not modified by Smith v. Savin, 141 N.Y. 315, 36 N.E. 338, and Le Marchant v. Moore, 150 N.Y. 209, 44 N.E. 770. Cf. 2 Cir., 86 F.2d 621, 622, 623. The pledged property was sold, without notice, on the Stock Exchange and over the counter. We turn to consider whether such sales were authorized by the pledge agreement.

Alma's margin card gave defendants no privilege to sell without notice; we believe, however, that the confirmation slips did. In arriving at this conclusion we have followed the law of New York as far as it will lead us. Where it does not specifically lead, we must proceed according to our own lights, hoping and believing that we are expressing "the law" of New York. Cf. Field v. Fidelity Union Trust Co., 3 Cir., 108 F.2d 521; A. L. C., The Demise of Swift v. Tyson—The Common Law of the United States, 47 Yale L.J. 1351.

■■ As we understand the law of New York, terms of the contract between broker and customer may be modified and supplemented by notices printed on confirmation slips. The notice on the confirmation slip is in form an offer. The offer may be accepted or not. Failure to dissent is not necessarily an acceptance, but the circumstances may be such that an assent to the offer may be inferred. If the customer is an experienced trader, if there has been a continued course of dealing in which confirmation slips were sent and their contents became known to the customer, the customer's silence and his continued trading may be construed as an acquiescence in the terms of the offer embodied in the confirmation slip. We believe, as before, that this is the fair import of Thompson v. Baily, 220 N.Y. 471, 116 N.E. 387. Hea-

phy v. Kerr, 190 App.Div. 810, 180 N.Y.S. 542, may perhaps tend somewhat the other way, though on differing facts; there was involved an ambiguous small-type reservation of power to repledge, not seen by the plaintiff and contrary to his explicit instructions. But the decision does not cite Thompson v. Baily, supra, and some of the statements treating the matter as one of law are inconsistent with the opinion of Chief Judge Cardozo in the latter case.

■ Alma & Co. opened its account with defendants in 1930; 195 confirmation slips subsequently were sent to Alma & Co. in New York—a majority of them while Alma resided in New York—and a like number to it in Vienna. Alma was an experienced trader, and before his troubles began in 1932, his New York office was fairly active. After reading the evidence we are entirely satisfied with the finding of the District Court that "these notices, or some cf them, came to the attention of Alma & Co., and their contents were known to Alma & Co. Alma & Co. never protested or objected in any way to the terms stated, but acquiesced therein." In view of this finding, our decision in Leviten v. Bickley, Mandeville & Wimple, 2 Cir., 35 F.2d 825, placing the burden of proving acquiescence on the broker, furnishes no aid to the plaintiff. Whether the offer was accepted presents a question of fact, and we see no occasion to upset the finding below. Leviten v. Bickley, Mandeville & Wimple, supra; Thompson v. Baily, supra; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., following section 723c.

■ The District Court also found that all sales were fairly made, in good faith, at prices currently prevailing in the New York market. The defendants thus performed all their duties to their customer, Alma & Co., under their contract of pledge. Their privilege to perform in the manner selected was acquired before March 12, 1932, when the Province of Upper Austria first asserted its title to the bonds. This privilege was in no way impaired by the notice served by the Province. Thompson v. St. Nicholas Nat. Bank, supra.

■■ We might also rest our decision upon another ground. When plaintiff served notice of its claim to ownership, it did not request that defendants abide by the pledge agreement with Alma & Co. Instead, it chose to demand unequivocal and immediate return of all the pledged bonds. This demand was entirely unsupportable;

defendants were justified in refusing to surrender. Plaintiff did not at this or any subsequent time before trial insist that defendants conform to the initial pledge agreement. If it had so insisted, defendants would easily have been able to comply. When a person has two grounds of complaint and presses only one, he waives his privilege to assert the second if the second is an objection which the other party could have cured had he been apprised of it in time. Brink v. Hanover Fire Ins. Co., 80 N.Y. 108; Littlejohn v. Shaw, 159 N.Y. 188, 53 N.E. 810; Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696, 5 S.Ct. 314, 28 L.Ed. 866.

There remain to be disposed of three subsidiary issues. The first involves seven bonds sold by defendants on April 26, 1932. Although several bonds had already been marketed with and without notice, defendants, on April 22, 1932, wrote a letter to Alma & Co. stating that, unless the debit balance was cleared up before May 2, they would proceed to liquidate the collateral. Without waiting until May 2, defendants nevertheless sold seven bonds on April 26. Had they not sent the letter, defendants would have been safe in transacting the sale of April 26. But it is the law of New York that a period of grace voluntarily conferred upon a customer cannot be entirely ignored by the broker. At least where the customer has relied on the promise and would have been able to procure the necessary funds within the period of grace, the broker's statement that he will extend time assumes the force of a binding obligation. Rosenthal v. Brown, 247 N.Y. 479, 160 N.E. 921. It is not our understanding, however, that, if the customer is in any event unable to secure the required margin, the promise cannot be retracted upon reasonable notice. Small v. Housman, 208 N.Y. 115, 125, 126, 101 N.E. 700. Before the defendants made the sale of April 26, they telephoned Alma & Co. and notified one Volk, Alma's appointed agent, of their intention. Volk replied, "That is all right. I can't get any money." Alma & Co. thus waived whatever respite had been granted by defendants' letter. The waiver cannot be attacked by plaintiff. Plaintiff might be in a position to complain if Alma & Co. had waived one of its contractual rights under the pledge agreement; plaintiff cannot, however, protest the waiver by Alma & Co. of a period of grace voluntarily afforded to it, and not to plaintiff. Plaintiff

never knew of the voluntary extension, and it could not have relied upon that extension to its detriment. Nor is it an answer that Volk had then just left Alma's employ; as the District Court held, defendants were entitled to rely on his previous authority until they had notice to the contrary. McNeilly v. Continental Life Ins. Co., 66 N. Y. 23; Claflin v. Lenheim, 66 N.Y. 301; Barkley v. Rensselaer & Saratoga R. Co., 71 N.Y. 205.

Defendants, on their appeal, protest the ruling made against them on the sale of seven bonds during the month of November, 1932. Apparently Alma & Co.'s debit balance had been cleared up as soon as three of these seven bonds were sold, but after all seven were disposed of Alma & Co. had a credit balance of $2,171.45. To the extent of this surplus, defendants exceeded their powers under the pledge agreement with Alma & Co., and are responsible to plaintiff for conversion. Their defense as to these seven bonds, and also as to the three bonds never sold, is that plaintiff cannot establish title to any of the securities pledged by Alma & Co., notwithstanding the finding of the District Court to the contrary. Briefly stated, their position is that bonds are fungibles, that the bonds acquired by Alma & Co. as agent for plaintiff were, with the permission of plaintiff, mingled with other identical bonds owned by Alma & Co. in its own right, and that the bonds pledged with defendants by Alma & Co. cannot be identified as the bonds belonging to plaintiff. But the plaintiff is readily able to make the necessary identification. Alma & Co. kept a list of the serial numbers of the bonds pledged by it to defendants. Every bond on this list is a bond which Alma & Co. acquired on behalf of plaintiff. Defendants have offered no evidence contradicting the accuracy of these lists, and their appeal cannot prevail.

Since we hold that defendants converted certain of the bonds (apparently four in number), sold during November, 1932, we must determine the measure of damages. In our former opinion we adhered to the rule announced in City of Memphis v. Brown, 20 Wall. 289, 87 U. S. 289, 304, 22 L.Ed. 264, and declared our preference for market value over face value. The subsequent intervention of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, compels us to revise that conclusion. The law of New York appears to be that

the face value of a corporate bond is the prima facie measure of damages for its conversion. Western R. Co. v. Bayne, 75 N.Y. 1. The plaintiff's bond issues were both redeemed in 1935 at par, and it was incumbent upon defendants to demonstrate within a reasonable time after notice of the conversion that plaintiff could have purchased substitute bonds in the open market at some price less than par. If plaintiff was then engaged in an extensive repurchasing operation, defendants would have to show that such substitute bonds were available in the market, in addition to the bonds acquired by plaintiff as part of its repurchasing project.

The District Court made no finding as to the extent of damage; instead it relied upon our statements in 2 Cir., 86 F.2d 621, 625, and rendered judgment for $3,304.39 and the three bonds never sold. We think that the case must be returned to the District Court for findings upon this one issue of the damages with respect to these converted bonds and for the appropriate judgment upon such findings. Findings should be made as to the number of bonds converted; as stated, the record indicates that there were four, but further examination may either confirm or correct this indication. The value of the bonds must be computed at par unless the defendants can show a less value as above stated.

The judgment of the District Court is therefore modified to provide for a recomputation of plaintiff's damages in accordance with this opinion. No costs will be taxed in favor of either party on these appeals.