106 So.2d 905 (1958)
A.M. KIDDER & CO., a Delaware corporation, Appellant,
v.
Benjamin W. TURNER, Appellee.
Supreme Court of Florida.
October 17, 1958.
Rehearing Denied December 16, 1958.
Paul C. Taylor and Hendricks & Hendricks, Miami, for appellant.
Starr W. Horton, Miami, for appellee.
HOBSON, Justice.
This is an appeal from a final judgment of the Circuit Court of Dade County, which judgment was predicated upon a verdict of a jury in an action by appellant against appellee.
The complaint alleged that on November 15, 1954, the appellee placed an "open" order, effective until cancelled, to sell 25,000 shares of Riddle Airlines stock at $0.45 per *906 share, through an agent of appellant stock brokerage firm. On March 30, 1955, appellant sold 12,500 shares at $0.45 and on March 31, 1955, 12,500 shares at $0.48. On April 5, 1955, appellant requested delivery but appellee failed and refused to deliver the stock. Sale of 2,500 shares was cancelled, but appellant purchased 22,500 shares at a cost of $70,259.74 for which it received $11,120.79, leaving $59,138.95 which it demanded from appellee.
Appellee's answer admitted placing an order to sell and not cancelling the same, but denied it was an "open" order in effect until cancelled. He also admitted the sale, but denied he was immediately thereafter notified of it. Finally he admitted refusal to deliver the stock, but denied knowledge of appellant's purchases and denied liability for any loss.
The answer further asserted six affirmative defenses. Those pertinent to this appeal are: Appellant was estopped by its knowledge that another broker also was authorized to sell the stock; appellant, with knowledge that appellee was on an ocean cruise at the time of the sale, did not carry through on its attempt to contact him; and appellant was estopped by knowledge of appellee's inexperience in dealing with stockbrokers.
The record discloses that appellant, through its agent, a Mr. Delin, prior to the instant transaction, sold 100 shares of insurance stock for the appellee. Before the consummation of this sale Delin called the appellee to confirm his ownership of the 100 shares and appellee's continued desire to sell.
There was testimony that Mr. Delin called appellee's office several times during the week of March 28, 1955, which was immediately prior to the first sale of the Riddle stock. On each occasion he was advised that appellee was on an ocean cruise and would not return until April 5th. Prior to the first sale of the Riddle stock on March 30, 1955, Delin again telephoned appellee's office. During this conversation appellee's secretary advised Mr. Delin that appellee could be reached by ship to shore telephone if the matter was urgent.
The first issue raised is that the trial court erred in denying appellant's motion to strike appellee's affirmative defenses. This motion was not ruled on until after all the evidence had been presented and both parties rested.
The rule has been well stated that a motion to strike a defense should not be granted where the defense presents a bona fide question of fact. Meadows v. Edwards, Fla. 1955, 82 So.2d 733, 735; Talarowski v. Pennsylvania Railroad Co., D.C.Del. 1955, 135 F. Supp. 503; Wilkinson v. Feild, D.C. Ark. 1952, 108 F. Supp. 541.
The record contains sufficient evidence to support the trial court's denial of appellant's motion to strike affirmative defenses.
With reference to the court's denial of appellant's motion for a directed verdict, the pivotal point is whether, as a matter of law, the agreement between the parties constituted an "open" order "good until cancelled" by the appellee. Appellant asserted that the appellee was bound to such agreement by virtue of the signature card signed by appellee on November 11, 1954, a November 18, 1954, confirmation letter sent to the appellee by appellant's agent Delin, and/or the notices printed on the confirmation slips which were mailed to appellee on at least four occasions.
The record discloses that the signature card merely requests the customer to affix his signature for identification purposes. It also authorizes the company to telephone the client at his home telephone number. The signature card makes no reference to the terms of any agreement between the parties.
The November 18th confirmation letter was sent by Mr. Delin to appellee acknowledging *907 his order to sell the Riddle stock. Said letter also confirmed the understanding that the appellee was to pay appellant 2 1/2¢ per share commission if the sale was consummated. However, this letter did not, either expressly or by implication, inform appellee that his order was an "open" order or that it was an order "good until cancelled". Thus we see that neither the signature card nor the letter obligated the appellee to an "open" order "good until cancelled".
With reference to the confirmation slips, evidence was introduced which disclosed that subsequent to November 15, 1954, and prior to March 30, 1955, appellee was mailed, at least, four monthly confirmation forms. These printed slips bore the following pertinent legends:
"We Have The Following Orders From You Good Until Cancelled [Printed]
 Sell [Printed]
 25,000 Riddle Airline [Typed]
 .45 less 2 ½ cents [Typed]
If Not Correct, Please Advise Immediately [Printed]
Notice: Clients are cautioned to exercise great care to the end that all existing `good until countermanded' orders are cancelled before entering new orders affecting the same. Please be advised that we are not responsible for losses or errors due to failure to comply with the above. [Printed in bold type.]
 A.M. Kidder & Co."
Appellee admitted receiving and reading at least one of these form notices.
It is the practice of brokers to print at the foot of confirmation slips, which they send their clients at regular intervals, the conditions upon which the customers' accounts are carried.
In cases such as the instant one, where the broker has not taken the precaution to obtain the customer's signature to an express agreement, the question arises whether the printed conditions on the confirmation slips constitute a contract between the parties predicated upon the customer's acceptance by acquiescence. Although such printed conditions may constitute a contract, whether they do or do not in a particular case is a question of fact for the jury. Thompson v. Baily, 1917, 220 N.Y. 471, 116 N.E. 387; Fisher v. Dinneen, 1932, 161 Md. 605, 158 A. 9; Keller v. Halsey, 1911, 202 N.Y. 588, 95 N.E. 634; Land Oberoesterreich v. Gude, 2 Cir., 1940, 109 F.2d 635.
In Meyer on Stock Brokers and Stock Exchanges, § 109, beginning at page 440, we find the following significant language:
"Lacking as it does the customer's express assent, and relying for his acceptance on his silence, the confirmation [slip] cannot be deemed to constitute his binding promise unless it is deemed an expression of his intention when viewed in the light of all the circumstances. In determining whether or not it constitutes a contractual obligation there must first be considered all arrangements and all communications, both oral and written, which have passed between the parties with respect to the subject matter covered by the printed conditions. * *"
and at page 441:
"If the parties have no understanding, the jury may consider all of the facts and circumstances relating to the customer's account and to the transactions in controversy. These facts and circumstances include the length of time the account has been open, the number of confirmations which the customer has received, the practice of the broker in actually making demands for margin or giving notices of sale on other occasions, and other matters from which the intention of the parties may be determined. The transmittal *908 of the confirmation cannot in itself create a contract nor impose on the customer the duty of repudiation under penalty of having a contract imposed on him. At most, it is an offer which the customer may accept or reject. Acceptance may be inferred from acquiescence but is not necessarily inferred therefrom. Whether or not it should be inferred is, as we have stated, in practically every instance a question of fact."
and at page 442:
"The admission or denial of the customer as to whether or not he read the notices will have a bearing on the jury's determination, but will not operate to create or destroy contractual force as a matter of law."
and, finally, at page 444:
"The burden of establishing the contractual validity of the confirmations is on the broker who seeks to rely on them."
To the same effect see Black, Stock Exchanges, Stockholders and Customers, Vol. 1, pp. 536-540.
The facts of this case disclose that the only reference to the order being "good until cancelled" was printed on the confirmation slips. Not one word was contained within the signature card or the letter of confirmation about this order being "good until cancelled". The appellant did not ask the appellee in so many words to assent to an order "good until cancelled". It left his assent to be inferred from his receipt of the printed forms.
It is here important to note the following additional facts: On March 30, 1955, at approximately 9:30 A.M., Mr. Murray telephoned the appellant's office and offered to purchase 12,500 shares of Riddle stock at 45¢ a share. Mr. Murray was advised by Mr. Delin that he felt sure he could obtain said stock, but he would call Mr. Murray back. He further informed Mr. Murray that the commission would be paid by the seller. At approximately 2:00 P.M. on the same day Mr. Delin telephoned Mr. Murray and confirmed their tentative arrangement. However, Mr. Murray was informed that the seller would not pay the commission and, therefore, the purchaser would have to pay a 2¢ per share commission.
The above conversation took place on the same day the appellee's secretary advised Mr. Delin that the appellee was on an ocean cruise and could be reached by ship to shore telephone if the matter were urgent. The record discloses that Mr. Delin did not attempt to so contact the appellee. Further, the appellant's agent had not been advised, by the appellee or any one connected with him, that the seller would not pay a commission.
When these conversations are considered, together with Mr. Delin's testimony that the reason he frequently telephoned the appellee was to "* * * make sure that there was no variation in his [appellee's] order and confirm that I was still working on it", a pattern of conduct is established which a jury might reasonably have believed cast serious doubt upon the intention of either party to be bound by a "good until cancelled" agreement. The mutual rights and obligations of the parties depend upon their intention, which must be gathered from all circumstances. Thompson v. Baily, 1917, 220 N.Y. 471, 116 N.E. 387; Keller v. Halsey, 1911, 202 N.Y. 588, 95 N.E. 634.
For these reasons, and in view of the circumstances which bear upon the question of acceptance by acquiescence, we believe the lines of their agreement were not so sharply defined that the court could trace them, as a matter of law, unaided by a jury.
The court being presented with a bona fide question of fact, involving conflicting evidence, properly denied appellant's motion for a directed verdict and submitted *909 the questions of fact to the jury. Katz v. Bear, Fla. 1951, 52 So.2d 903; Hilkmeyer v. Latin American Air Cargo Expediters, Inc., Fla. 1957, 94 So.2d 821; Beers v. Diamond Cabs, Inc., Fla. 1958, 104 So.2d 388.
We conclude that the jury, upon a consideration of all the facts and circumstances of this case, was justified in deciding, as it obviously did decide, that appellee had no intention to be bound by acquiescence to the language of the confirmation slips and that appellant, through its agent Delin, knew such to be the fact.
Appellant further assigned as error the court's refusal to give its five requested charges. On many occasions we have held that requested instructions usually are considered in light of all instructions given by the trial court and if those instructions contained in the charges given are sufficient on the point or points in controversy, then this court will not interfere. General Ready-Mix Concrete v. Wheeler, Fla. 1951, 55 So.2d 331, 333; Register v. State, Fla. 1950, 44 So.2d 73. Applying this rule to the instant case, we conclude that the trial judge's refusal to give the requested instructions did not constitute harmful error.
Appellant also assigns as error the court's charge covering a stockholder's duty to his principal and the charge on burden of proof as to defendant's affirmative defenses. The rule applicable to this contention was set forth in the case of Staff v. Soreno Hotel Co., Fla. 1952, 60 So.2d 28:
"* * * we must, before we disturb the judgment, determine that the charge assailed, considered by itself and also in connection with the whole charge, was erroneous and harmful as well."
See also Prior v. Pounds, 1934, 113 Fla. 308, 151 So. 890, 892; Dowling v. Loftin, Fla. 1954, 72 So.2d 283, 285. The two charges given but objected to, when considered in the context of the entire charge, are not harmful or erroneous and do not appear to have misled the jury.
Affirmed.
TERRELL, C.J., and DREW and O'CONNELL, JJ., concur.
ROBERTS, J., dissents.