**WINDERT WATCH CO., INC., Plaintiff,**

v.

**REMEX ELECTRONICS LIMITED, International Precision Time Ltd., Tele-Art Corporation and Time Products Limited, Defendants.**

**INTERNATIONAL PRECISION TIME LIMITED and Remex Electronics Limited, Plaintiffs,**

v.

**WINDERT WATCH CO., INC. and Morris Buchinger, Defendants.**

**Nos. 78 Civ. 5266, 79 Civ. 0141.**

United States District Court, S. D. New York.

April 17, 1979.

---

Austrian, Lance & Stewart, P.C., New York City, for plaintiff Windert Watch Co., Inc., and Morris Buchinger; Sandra Gale Behrle, New York City, of counsel.

Schreiber, Klink, Schreiber & Lehnardt, P.C., New York City, for Remex Electronics Limited and International Precision Time Limited; Dale A. Schreiber, Gregory K. Arenson, Michael R. Klekman, New York City, of counsel.

LASKER, District Judge.

Windert Watch Co., Inc. is a California corporation which distributes wristwatches. It sues Remex Electronics Limited, International Precision Time Ltd. and Tele-Art Corporation, Hong Kong corporations which manufacture watches, and Time Products Limited, a British corporation which distributes watches, for lost profits and punitive damages. Remex and IPT move to dismiss Windert's claim against them for lack of subject matter jurisdiction.

Windert asserts that subject matter jurisdiction is present under the diversity statute, 28 U.S.C. § 1332(a)(2), relating to actions between a citizen of one of the states of the United States and a citizen or subject of a foreign state where the amount in controversy is more than $10,000.

The plaintiff is a citizen of one of the states of the United States.[1]  See 28 U.S.C.

---

1. Windert, in its complaint, avers that it is a citizen of New York.  If Windert's principal place of business is located in New York, it is indeed a citizen of New York as well as of

§ 1332(c). However, Remex and IPT argue that diversity is lacking because they are citizens of Hong Kong which, they argue, is not a "foreign state" within the meaning of the statute.

■ There is no doubt that Remex and IPT are citizens of Hong Kong. An alien corporation is a citizen of the entity under the laws of which it is incorporated,[2] *see National Steamship Co. v. Tugman,* 106 U.S. 118, 120–21, 1 S.Ct. 58, 27 L.Ed. 87 (1882); *Banco Nacional de Cuba v. Sabbatino,* 307 F.2d 845, 852, *rev'd on other grounds,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), and Remex and IPT were incorporated under the Companies Ordinance of Hong Kong, a statute adopted in 1932 by the Governor and Legislative Council of Hong Kong. The issue turns, therefore, on whether Hong Kong is a "foreign state" within the meaning of 28 U.S.C. § 1332(a)(2). The cases construe the term "foreign state" to mean a political entity that is recognized by the United States as a free and independent sovereign. Thus, in *Klausner v. Levy,* 83 F.Supp. 599 (E.D.Va. 1949), the court found that the plaintiffs, citizens of the then mandate of Palestine, were not citizens of a foreign state because at the time Palestine, as a mandate territory administered by Great Britain and lacking local autonomy, was not a sovereign. *Id.* at 600.

In *Murarka v. Bachrack Bros.,* 215 F.2d 547 (2d Cir. 1954), the Second Circuit found that the plaintiffs, citizens of India, were citizens of a foreign state and that the district court possessed jurisdiction of their action against a New York corporation even though India was still formally a part of the British Empire when the plaintiffs had filed their complaint. The plaintiffs filed their complaint in July, 1947, and India did not become formally independent until August 15, 1947. The court emphasized, however, that India could be considered a state on the earlier date only because the United States had previously accorded it de facto recognition.

In anticipation of India's forthcoming independence, the United States had sent an ambassador to the interim government that had been set up to assist in the transition to independence. India had also sent an ambassador to the United States. Justice, then Circuit Judge, Harlan, writing for the court, concluded: "Unless form rather than substance is to govern, we think that in every substantial sense by the time this complaint was filed India had become an independent international entity and was so recognized by the United States." *Id.* at 552. The court's opinion makes clear that, had India not yet been accorded at least de facto recognition by the United States, it would not have been a "state" within the meaning of the diversity statute. *See also Betancourt v. Mutual Reserve Fund Life Association,* 101 F. 305, 306 (C.C.S.D.N.Y. 1900) (citizen of Cuba held a citizen of a foreign state where Spanish rule had ceased and the United States had recognized Cuba as "free and independent," even though

California for purposes of the statute. 28 U.S.C. § 1332(c) provides that, for determination of diversity, a domestic corporation is a citizen both of its state of incorporation and of the state of its principal place of business. Windert has not indicated that New York is the state of its principal place of business, but only that it is authorized to do business there. However, it is not necessary to determine whether Windert has a dual citizenship; for purposes of determining whether diversity jurisdiction is present under 28 U.S.C. § 1332(a)(2), a showing that Windert is a citizen of at least one of the fifty states is sufficient.

2. Some district courts have held, by analogy to 28 U.S.C. § 1332(c), *see* note 1 *supra,* that an alien corporation, like a domestic corporation, is a citizen of the state where its principal place of business is located as well as of its place of incorporation. *See, e. g., Bergen Shipping Co., Ltd. v. Japan Marine Services, Ltd.,* 386 F.Supp. 430, 433 (S.D.N.Y.1974). The Second Circuit has, however, indicated that, at least in the absence of a statute creating a dual citizenship for diversity purposes, an alien corporation is "probably" a citizen only of its place of incorporation. *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 628 n.5 (2d Cir. 1978). This court need not determine which is the proper rule because there is no allegation that the defendants' principal places of business are located elsewhere than in Hong Kong.

Cuba was still occupied by United States troops).

The United States has not accorded Hong Kong recognition, de facto or otherwise. Hong Kong is a Crown Colony of the United Kingdom, parts of which were leased and other parts of which were ceded outright to the United Kingdom by China in the nineteenth century. It is administered by a Governor who is appointed by the Queen and serves as her representative. The Governor acts with the advice and consent of a legislative council none of whose members is elected. A communication sent defendants' counsel by a representative of the State Department confirms that the United States does not recognize Hong Kong as an independent state but rather regards it as a colony of the United Kingdom. The United States carries on no direct diplomatic dealings with Hong Kong. Exhibit J. to Defendants' Affidavit sworn to on November 21, 1978.

In reply Windert contends that Hong Kong is a state within the meaning of 28 U.S.C. § 1332(a)(2) despite its nonsovereign status. Windert bases its argument on the proposition that not only sovereign entities but also the political subdivisions of sovereign entities are "states" within the meaning of 28 U.S.C. § 1332(a)(2).

In support of this proposition Windert cites *Land Oberoesterreich v. Gude,* 109 F.2d 635 (2d Cir. 1940), a case interpreting the statutory provision for diversity jurisdiction of an action brought not by a citizen of a foreign state but by a foreign state itself against a citizen of one of the states of the United States. *See* 28 U.S.C. § 1332(a)(4). The *Land Oberoesterreich* court concluded that the governmental subdivision of an entity which the United States had recognized as a sovereign state could itself be treated as a sovereign state for purposes of determining whether an action between the subdivision and an American citizen was within the court's diversity jurisdiction. *Id.* at 637.

Windert argues that the *Land Oberoesterreich* holding means that a "subdivision" of a sovereign foreign entity is to be considered a "foreign state" also for purposes of determining whether a district court's diversity jurisdiction encompasses a suit, like the one here, that is between a citizen of an American state and a citizen of the subdivision of a foreign state rather than the subdivision itself. According to Windert, Hong Kong is a political "subdivision" of the United Kingdom; an entity clearly recognized by the United States as a sovereign state. It follows, Windert argues, that citizens of Hong Kong are citizens of a foreign state.

In support of its contention that Hong Kong is a "political subdivision" of a foreign state, Windert has submitted a letter from Hong Kong counsel containing a broad statement that "Hong Kong is a political subdivision of the United Kingdom." Supplementary Exhibit to Plaintiff's Memorandum of Law. However, this conclusion is at odds with the Act of Parliament by which the United Kingdom was constituted, which indicates that the United Kingdom consists only of England, Scotland, Wales, and Northern Ireland. *See* Royal and Parliamentary Titles Act of April 12, 1927. Hong Kong is not one of its political subdivisions. Moreover, even if *Land Oberoesterreich* were to be interpreted to mean that the citizen of a political subdivision of a foreign state is a citizen of a foreign state for diversity purposes, an interpretation that is itself open to question,[3] the case does

---

**3.** In conjunction with the enactment of the Foreign Sovereign Immunities Act in 1976, Congress revised 28 U.S.C. § 1332(a)(2), which had provided for diversity jurisdiction not only in actions between a citizen of a state of this country and a citizen or subject of a foreign state but also in actions between a citizen of a state of this country and the government of a foreign state, to cover only actions between a citizen of an American state and a citizen or subject of a foreign state. A new subsection was added to 28 U.S.C. § 1332 to provide for diversity jurisdiction of suits brought by foreign states against the citizens of an American state. *See* 28 U.S.C. § 1332(a)(4). 28 U.S.C. § 1330 was enacted, also in 1976, to provide jurisdiction of actions brought by citizens of an American state as plaintiffs against the government of a foreign state. For purposes of Sections 1330 and 1332(a)(4) only, the term "for-

not support the proposition that the citizen of a colony of a foreign state is a citizen of a foreign state.

Windert has also sought to establish that plaintiffs are citizens of a foreign state because they are citizens not only of Hong Kong but also of the United Kingdom, which is a "foreign state." Again relying on the premise that Hong Kong is a "subdivision" of the United Kingdom, Windert argues that, because Hong Kong is a subdivision of the United Kingdom, citizens of Hong Kong are, in the larger sense, also citizens of the United Kingdom.

■ Windert's argument that Remex and IPT are citizens of the United Kingdom as well as of Hong Kong is unconvincing. As pointed out above, Hong Kong is not a subdivision of the United Kingdom. Moreover, it is implicit in the court's opinion in *Murarka, supra,* that the citizen of a colony of the United Kingdom is not also a citizen of the mother country. Quite obviously it would have been unnecessary for the *Murarka* court to analyze the political status of India to determine whether the Indian plaintiffs were citizens of a foreign state had the court concluded that they were citizens of the United Kingdom merely because India was then a colony of the United Kingdom. Furthermore, although the United Kingdom has by statute made natural persons who are citizens of Hong Kong or other British colonies subjects of the Crown, *see* British Nationality Act 1948 § 1, the privileges of British nationality are not conferred on corporations formed under the laws of Hong Kong, *see* Companies Act 1948 § 406. Justice Harlan noted in *Murarka, supra,* that "[i]t is the undoubted right of each country to determine who are its nationals, and it seems to be general international usage that such a determination will usually be accepted by other nations." 215 F.2d at 553.

Because Remex, IPT and Tele-Art Corp. are not citizens of a foreign state within the meaning of the diversity statute, Windert's claims against them must be dismissed for lack of jurisdiction.

■ Time Products Limited, a British corporation, remains as a defendant. Actions between a citizen of a state of this country and a corporation formed under the laws of Great Britain come within a federal court's diversity jurisdiction. *Times Newspaper Ltd. (of Gr. Br.) v. McDonnell Douglas Corp.,* 387 F.Supp. 189–91 (C.D.Calif.1974). Dismissal of Windert's claim against Time Products would be proper if the Hong Kong corporations were "indispensable" to a fair and just adjudication of that claim within the meaning of Federal Rule of Civil Procedure 19. *See County of Wyoming v. Erie Lackawanna Railway Co.,* 360 F.Supp. 1212 (W.D.N.Y.1973). We find that those defendants are not "indispensable." Windert has alleged that the defendants are jointly and severally liable. One jointly and severally liable tortfeasor is not an indispensable party to an action brought against another. *Kerr v. Compagnie de Ultramar,* 250 F.2d 860, 863 (2d Cir. 1958); *Herpich v. Wallace,* 430 F.2d 792, 817 (5th Cir. 1970).

After Windert filed its complaint in this action, Remex sued Windert and its president, Morris Buchinger, in the Supreme Court of New York. That case was removed here. The parties have stipulated that, if the court grants Remex and IPT's motion to dismiss, the action brought by them would be remanded to state court. Accordingly, that action is remanded to the New York State Supreme Court, as is the motion of Morris Buchinger to dismiss the Remex—IPT claim against him for lack of personal jurisdiction.

It is so ordered.

eign state" was defined by crossreference to Section 1603 of the new Foreign Sovereign Immunities Act, which defines "foreign state" to include the political subdivisions of a foreign state. 28 U.S.C. § 1603(a). That Congress did not choose to extend that definition of foreign

state to subdivision (a)(2) of Section 1332 suggests a legislative intent that the term foreign state as it is used in the subdivision should not be construed to include the political subdivisions of a foreign state.