**In re AMERICAN TISSUE MILLS.**
**No. 265–53.**

United States District Court,
D. Massachusetts.
April 8, 1954.

John I. Robinson, Springfield, Mass., Harry M. Ehrlich, Springfield, Mass., for receiver.

Charles W. Bartlett and Lawrence J. Sullivan, Boston, Mass., for petitioning creditors.

Joseph Talamo, Worcester, Mass., for Edward Krock.

Michael J. Donohue, Holyoke, Mass., for two employees.

Sidney Cooley, Springfield, Mass., for A. J. Armstrong.

John S. Begley, Holyoke, Mass., for Holyoke Water Power Co. and miscellaneous creditors.

David Burstein, Boston, Mass., for debtor.

Frank L. Kozol, and Frank H. Shapiro, Boston, Mass., for creditors committee and 34 individual creditors.

Marshall Chribman, for two attorneys, Black & Harper, and Henry Friedman, and creditor A. W. Chesteron Co.

J. Nolen, Holyoke, Mass., for Watchell, Manheim and Grouf.

Frederick B. Hobart, Boston, Mass., as an individual and for Boit, Dalton & Church, and Independent Service Corp.

Arthur T. Wasserman, Boston, Mass., for various creditors.

Daniel J. Murray, for Atlantic Refining Co.

Jack L. Wolfson, Worcester, Mass., for majority stockholder.

Raymond T. King, Springfield, Mass., for Perkins, Marion Duryea and Edward H. Lyman.

Howard D. Barger, Holyoke, Mass., for various creditors.

Robert Manning, Worcester, Mass., for International Papermakers.

John Moriarty, for a creditor.

WYZANSKI, District Judge.

There is before me a petition filed by Arthur T. Wassermann, Esq. as counsel for unsecured creditors, seeking a modification of the plan of reorganization. This petition was obviously filed in response to a suggestion in my opinion of March 1, 1954, D.C., 120 F.Supp. 950, and nothing that I say hereafter is intended to imply that it was not proper to file this petition, for insofar as there could be a judicial initiative with respect to such matter, I suppose I am properly to be charged with that dereliction.

The petition recognizes that although applications for allowances were made to this Court by counsel and others in the amount of approximately $85,000, there was in fact allowed $24,550 as fees and $2,230.56 for expenses. The obvious discrepancy between the amounts asked and the amounts allowed, and the reasons given by the Court for cutting the applications (which included as one of the reasons the fact that unsecured creditors were receiving such small amounts in comparison with the fees requested by counsel) naturally resulted in a suggestion by the unsecured creditors that the plan which had heretofore been approved by this Court should be modified and some of the money which counsel had applied for and not received be awarded to unsecured creditors.

In connection with this application, it is important to bear in mind the fact that the plan on its face does not show how much, either by way of outer limits or by way of specific figures, it was expected would be allowed by the Court for administration expenses, counsel fees and the like. Moreover, no suggestion is made at the bar of this court that there is any evidence available that at the time that the plan was proposed or negotiated or confirmed, all the parties had a specific or even informal understanding as to what would be allowed in the way of administration expenses, counsel fees, and the like.

In short, the situation was one in which the reorganized corporation, and Mr. Krock, as a secured creditor holding a mortgage on that corporation, as a stockholder in that corporation, and as an investor supplying new funds to that corporation, took the risk as to how much this Court would allow, within its discretion, and with due reference to standards of reasonableness, to counsel and to others who made application for compensation. Put another way, Mr. Krock speculated as to whether what the reorganized company received would be subject to a large or small diminution on account of as yet unallowed fees for which application had been made or would be made to this Court.

No doubt, this course of conduct by Mr. Krock and by the unsecured creditors and by others involved elements of risk which it might not be desirable to adopt as a universal pattern in the future. Perhaps a more sophisticated judge, or counsel who have learned from experience the risks of waiting until the last moment to have fees allowed, will in the future, by provision in the plan or by some earlier application to the Court, avoid the problems which are presented here.

But I am not to deal with hypothetical cases, but with the precise facts before me. And I am presented with a situation in which the plan has been approved and is in effect, and where the parties allowed it to go into effect and the Court allowed it to go into effect, with an important point, to wit, the allowance of fees, undecided, as they all knew.

The legal problem which is presented is whether under these circumstances I even have the power to alter the plan. Section 229, sub. c, 11 U.S.C.A. § 629, sub. c, provides [reading]

"When a plan has been substantially consummated as defined in subdivision (a) of this section * * * the plan may not thereafter be altered or modified if the proposed alteration or modification materially and adversely affects the participation provided for any class of creditors * * * by the plan."

I shall for present purposes assume that the plan here in issue had been substantially consummated. For reasons that will appear later, I do not find it necessary to consider whether the second condition specified in Section 229, sub. a, had or had not been met.

Mr. Krock seems to me plainly to have been a "creditor" within the meaning of the quoted language. He held, as a result of assignment from his representative, Mr. Talamo, who in turn held as assignee of C. I. T., a mortgage upon what may conveniently be referred to as the tangible property of the corporation at the time that the proceedings under Chapter 10 began. There were three individuals secondarily liable upon that mortgage. At the time that the mortgage would be foreclosed, there was not, and in the nature of the circumstances there could not have been, an absolute certainty that the corporation would be able to pay in full. If the assets of the corporation were now to be diminished by the payment out of a larger sum than the 17½ per cent due to creditors under the original plan approved by this Court, there might easily be a material and adverse effect upon Mr. Krock. This has nothing to do whatsoever with the question as to the release of the three individuals who were secondarily liable upon the mortgage and who have been discharged at some recent date. Nor has my ruling anything to do with the contention that Mr. Krock

is not only a creditor of the type referred to in Section 229, sub. c, but is, or is claimed to be, a stockholder within that section.

In short, I conclude that the alteration here proposed is beyond my power.

■ But if I am mistaken in this view, I should as a matter of discretion deny the petition, for I now see what I did not earlier see, that those interested in the reorganized corporation at all times were faced with uncertainty as to how much the property of the corporation would be affected by whatever this Court should allow as administration expenses and counsel fees. They deliberately courted this risk, and the others who were concerned with the plan were perfectly willing to have this risk assumed. It happens that the risk has turned out to be a more profitable venture for Mr. Krock and those associated with the reorganized corporation than it has been for the unsecured creditors. But this Court is not to set aside a gamble deliberately taken merely because one party has been a big winner and the other party a substantial loser.

Petition denied.