**In the Matter of NORTH ATLANTIC AND GULF STEAMSHIP COMPANY, Incorporated, and Nortropic Shipping Company, Incorporated, Debtors.**

**Nos. 93343, 93508.**

United States District Court
S. D. New York.
April 11, 1966.

Bergerman & Hourwich, New York City, for trustee; Milton M. Bergerman, William Baronoff, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for claimant, United States; Louis E. Greco, Atty. in Charge, Gilbert S. Fleischer, Atty., Admiralty & Shipping Section, Dept. of Justice, of counsel.

Maurice & McNamee, New York City, for Seaboard Surety Co.; Stewart Maurice, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

In these Chapter X reorganization proceedings, the trustee has moved to deny priority to a non-tax claim of the United States in the sum of $138,916.58 for additional charter hire due from the debtor North Atlantic and Gulf Steamship Company, Incorporated on the ground that such a claim is not entitled to priority under Chapter X.

The Government contends (1) that denial of priority at this time is barred by § 229(c) of the Bankruptcy Act since the Government's right to priority was vested by a plan of reorganization declared substantially consummated long before the trustee made this motion; (2) that the trustee is estopped to claim denial of priority; (3) that the trustee's motion should be denied as untimely in the exercise of discretion; and (4) that in any event the claim is entitled to priority pursuant to 31 U.S.C. § 191.

These proceedings for reorganization were commenced in May 1958. The claim of the Government involved here asserting right to priority under 31 U.S.C. § 191[1] was duly filed on April 29, 1959. The administration of the estate was complicated and protracted, and involved numerous litigated questions. After administration had been largely completed and partial distributions made to creditors, a plan of reorganization was duly confirmed by the court on September 19, 1962.

The plan provided, in part, that "all tax and other claims of the United States, * * * shall be paid in full in cash in such amounts as shall finally be determined by settlement, litigation or otherwise, and if not so determined prior to the consummation of the Plan, shall be provided for by the creation of a cash reserve therefor or by the payment into the registry of the Court for an amount equal to the total of such claims."

The plan further provided for a realization corporation to liquidate the debtor's slow assets and the general creditors became stockholders entitled to share pro rata in the proceeds.

On December 26, 1962 an order was entered under § 229(b) of the Bankruptcy Act declaring that the plan had been substantially consummated.

The Government's claim involved here was for additional charter hire on charters of Government vessels by the debtor made through the Maritime Commission due and owing to the United States under the rather complicated provisions of the Merchant Ship Sales Act of 1946, 50 U.S.C.App. §§ 1735–1746, and incorporated provisions of the Merchant Marine Act of 1936, 46 U.S.C. §§ 1198–1200. The claim was a phase of a continuing controversy between the debtor and the Government as to whether the Government was entitled to additional payments, or refunds of overpayments were due to the charterers. Suits by the debtor against the Government involving these same questions had been pending in this court for several years at the time of reorganization. A number of cases by other parties involving these questions were also pending in this and other districts.

In June 1961 the trustee moved to disallow the Government's claim in its entirety on the ground that there were no sums due and owing for charter hire from the debtor to the Government. The Government then cross-moved to increase its claim by some $7,450,000.

On July 28, 1961 both the trustee's motion for disallowance of the Government's claim and the Government's motion to increase the amount came on to be heard before me. Trustee's counsel opposed the motion for increase primarily on the ground that it was untimely and that to grant it would disrupt the orderly administration of the estate and would unduly delay settlement and distribution. The motion to increase the claim was thereupon denied from the bench.

Resolution of the substantive questions raised by the trustee's motion to disallow the claim in its entirety was dependent on the outcome of the pending litigation in this and other courts posing similar questions. For this reason, decision on the trustee's motion to disallow was held in abeyance with the concurrence of all parties until the final determination of these issues in the pending cases. In Massachusetts Trustees of Eastern Gas & Fuel Associates v. United States, 377 U.S. 235, 84 S.Ct. 1236, 12 L.Ed.2d 268 decided on May 25, 1964 these issues were finally deter-

1. § 191. "Priority established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

mined adversely to the trustee's contentions. The trustee then conceded the validity of the Government's claim, reserving only some complicated problems of cumulative accounting as to the precise amount due which are still in process of resolution by negotiation between the trustee and the Government.

In the meantime the plan of reorganization had been proposed, approved, confirmed and, in December 1962, declared substantially consummated.

The trustee consistently took the position throughout these reorganization proceedings, and until more than two years after the plan of reorganization had been declared substantially consummated, that the Government's claim for $138,916.58, if valid, was entitled to priority. In an affidavit and memorandum of law dated as early as April 19, 1961, on his application for retention of special counsel to represent the trustee in its controversies with the Government, trustee's counsel conceded that the Government was entitled to priority under 31 U.S.C. § 191. This was also confirmed in the course of the argument and briefs on the motions to disallow the Government's claim and the Government's cross-motion to increase.

By March 1962 the trustee had completed proceedings for disallowance of priority to a number of large claims asserted against the estate by governmental authorities. Yet no objection was ever raised to the priority of the claim of the United States involved here.

As late as February 27, 1964, only three months before the *Eastern Gas Associates* decision by the Supreme Court and more than a year after substantial consummation the trustee stated on the record in open court that if the Government's claim were allowed "it will be allowed as a priority claim."

The trustee's present motion made in March 1965 raised for the first time during the entire reorganization proceedings, as trustee's counsel conceded on the argument, the question of whether the Government's claim was entitled to priority.

In fairness to trustee's counsel it should be said that the motion was not so long delayed because of any neglect or oversight on his part. In June of 1964 the Court of Appeals of the Fifth Circuit in United States v. Anderson, 334 F.2d 111, cert. den., 379 U.S. 879, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964), in a reasoned opinion, reaffirmed what has been considered to be the established principle that non-tax claims of the United States were entitled to priority in Chapter X proceedings under 31 U.S.C. § 191. (See 6 Collier, Bankruptcy p. 2845 and fn. 13 (14th ed. 1964)). There was, however, a brief dissent which reached the opposite conclusion.

When the dissent came to his attention trustee's counsel, with the commendable diligence which has characterized his representation of the estate throughout these proceedings, restudied the question and concluded that the issue of priority ought to be presented to the reorganization court for decision. This motion followed.

The trustee urges that the court should deny priority even at this belated stage of the proceedings because the Government is not entitled to priority as a matter of law. But quite apart from the merits, on which I express no view, it is plain to me that the trustee's motion comes too late and that denial of priority to the Government at this time is barred by § 229(c) of the Bankruptcy Act.

Section 229 [2] was added to Chapter X of the Bankruptcy Act in 1952 in order to clarify prior uncertainty as to the

2. "Acts deemed consummating plan; order declaring consummation; substantial alteration or modification

(a) A plan shall be deemed to have been substantially consummated if, insofar as applicable, each of the following events has occurred:

(1) transfer, sale or other disposition of all or substantially all of the property dealt with by the plan pursuant to the provisions of the plan;

(2) assumption of operation of the business and management of all or substantially all of the property dealt with

# 728

point in the reorganization proceeding at which rights based under the plan vested sufficiently to make it equitable to cut off further right to amend or modify the plan as to matters materially and adversely affecting the rights of creditors or stockholders. (2 U.S.Code, Cong. & Adm. News, P. 1976–1977 (1952); 6 Collier, Bankruptcy p. 3936 (14th ed. 1964)). Subdivision (c) of § 229 provides that when a plan has been substantially consummated it may not thereafter be altered or modified so as to materially and adversely affect the participation provided for any class of creditors.

In the proceedings at bar the plan of reorganization was substantially consummated pursuant to subdivision (c) of § 229 and an order so declaring pursuant to subdivision (b) was entered on application of the trustee on December 26, 1962. Rights created by the plan became vested as of that date. Therefore, no alteration or modification of the plan may now be made which materially and adversely affects participation provided for any class of creditors.

The plan placed *all* claims of the United States, including the claim involved here, as well as claims for state and local taxes, in a separate class of debt liability and provided for their full payment in cash. The cash reserve provided for the Government's claim under the plan is being held by the trustee.

To deny the Government the priority granted by the plan at this time would be in derogation of its vested rights as a creditor and would plainly be an alteration or modification of the plan which would materially and adversely affect the participation provided for the priority creditors in direct contravention of § 229(c). Cf. Kelby v. Prudence-Bonds Corp., 140 F.2d 185 (2 Cir. 1944) (per curiam); In re Chain Investment Co., 102 F.2d 323 (7 Cir. 1939). Such alteration or modification is barred by that section. See In re American Tissue Mills, 120 F.Supp. 953 (D.Mass.1954). The trustee's motion must be denied on that ground alone.

■ The trustee urges that he should not be barred because his motion to disallow the claim in its entirety on its substantive merits was still pending and undetermined awaiting decision of the *Eastern Gas Associates* case by the Supreme Court at the time the order of substantial consummation was entered. His position is that his attack on the overall merits of the claim necessarily includes an attack on its priority. I see no merit in this position under the circumstances here.

As the record in these proceedings makes plain, the trustee repeatedly conceded that the Government was entitled to priority. Indeed, the plan was proposed, confirmed and consummated upon the understanding that the Government would have priority if the validity of its claim was upheld on the merits.

The trustee by his concessions, his course of conduct and his failure to raise timely objection, waived any rights he had to question priority and he is bound

by the plan by the debtor or by the corporation used for the purpose of carrying out the plan; and

(3) commencement of the distribution to creditors and stockholders, affected by the plan, of the cash and securities specified in the plan as provided for in section 624 of this title.

(b) Upon notice to the trustee, the debtor, the Securities and Exchange Commission and such other persons as the judge may designate, the trustee, the debtor in possession, the corporation to which the assets of the debtor are to be transferred under the plan, or any other party in interest may apply to the judge for an order declaring the plan to have been substantially consummated under the provisions of subdivision (a) of this section.

(c) When a plan has been substantially consummated as defined in subdivision (a) of this section, or an order has been entered under subdivision b of this section, the plan may not thereafter be altered or modified if the proposed alteration or modification materially and adversely affects the participation provided for any class of creditors or stockholders by the plan." (§ 229 Bankruptcy Act, 11 U.S.C. § 629).

by that waiver. See Land Oberoesterreich v. Gude, 109 F.2d 635, 639 (2 Cir. 1940).

The only reservation made in the plan was as to the trustee's challenge to the overall validity of the claim. When that was determined in the Government's favor by the decision in the *Eastern Gas Associates* case, nothing remained except to pay the amount determined to be due "in full in cash" out of the reserve held by the trustee as the plan provided.

■ Moreover, quite apart from § 229, the trustee is estopped to raise the question of denial of priority at this late date. There is no doubt that the Government was led to believe that it would receive priority by the repeated concessions to that effect during the course of the reorganization proceedings and by the plan itself. Nor can it be doubted that the Government, relying on the concessions so made and the plan provision that its claim would receive priority if determined valid, was deterred from taking action available to it which might have protected its priority rights.

Had this estate been administered in straight bankruptcy it is clear that the Government would have been entitled to priority on its claim for charter hire under § 64 of the Bankruptcy Act. See 31 U.S.C. § 191; United States v. Kaplan, 74 F.2d 664, 665 (2 Cir. 1935); 3 Collier, Bankruptcy, ¶ 64.501 (14th ed. 1964). It became apparent early in the reorganization proceedings that there was no hope of reorganizing the debtor so as to create a viable entity which could continue in business and that liquidation and distribution of some sort was the only alternative. It is plain that the Government could have taken steps directed to that end to insure its priority status. Such steps were available during the proceedings concerning the proposed plan, its ratification, confirmation and consummation. See Bankruptcy Act, §§ 146, 169–174, 179, 180, 221, 236; Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 621, 63 S.Ct. 807, 87 L.Ed. 1032 (1942); Oakland Hotel Co. v. Crocker First Nat'l Bank, 85 F.2d 959, 959–960 (9 Cir. 1936); 6 Collier, Bankruptcy (14th ed. 1964) pp. 1786, 2092–99, 2827, 3890, ¶ 12.02, ¶ 12.03 and cases cited therein.

It is idle at this stage to speculate on what steps the Government would have taken looking toward placing the debtor in straight bankruptcy had the issue of priority been timely raised or how such moves may have turned out. The fact is that no such steps were taken by the Government and, indeed, no objections were raised by anyone to the continuation of the Chapter X proceedings or to the plan of reorganization which provided priority to the Government as proposed, confirmed and consummated.

In good faith reliance on the position taken by the trustee the Government forbore to avail itself of rights or remedies to its substantial prejudice. Such rights and remedies are no longer available to it. "[C]ourts of bankruptcy are essentially courts of equity," Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). The well settled principles of equitable estoppel must be applied under these circumstances to bar the trustee from this radical change of position to the Government's prejudice. See, e. g., Bergeron v. Mansour, 152 F.2d 27, 30 (1 Cir. 1945); Ralston Purina Co. v. United States, 58 F.2d 1065, 1068, 75 Ct.Cl. 525 (1932); Mann v. Anderson, 20 F.Supp. 643, 646 (S.D.N.Y.1937).

■ Finally, even were the trustee not barred by § 229 and by equitable estoppel, I would refuse to entertain the trustee's motion to deny priority at this late date in the exercise of my discretion. Compare In re American Tissue Mills, 120 F. Supp. 953, 956 (D.Mass.1954). I have been intimately familiar with the details of the proceedings in this case from their inception. It was well understood by all parties quite early in the proceedings on the basis of the trustee's concessions that if the claim of the Government were held valid it was entitled to priority and would be paid in full. The plan so provided and was approved by me on that understanding. The Government's motion to increase the amount of its claim made as

early as June 1961 was denied by me as untimely.

It would be grossly unfair and prejudicial to the Government to permit the trustee to reverse his position two years after the plan had been substantially consummated.

For all of the foregoing reasons I do not reach the trustee's contention that priority should be denied on the ground that a claim for charter hire is not entitled to priority in Chapter X under 31 U.S.C. § 191. It is therefore unnecessary to discuss the persuasive majority opinion in the *Anderson* case which reaffirms what seems to have been the prevailing rule, or the somewhat cryptic dissent in that case which triggered the trustee's motion.

The trustee's motion to deny priority is in all respects denied.

It is so ordered.