**In the Matter of HUDSON & MANHATTAN RAILROAD COMPANY, Debtor.**

**No. 90460.**

United States District Court,
S. D. New York.

July 8, 1971.

Frederick R. Medero, for Securities and Exchange Commission.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Reorganized Co.; Jacob Imberman and Steven Stein, New York City, of counsel.

Seward & Kissel, New York City, for Franklyn B. Boutelle, Member of Board of Directors of Hudson & Manhattan; Eugene P. Souther, New York City, of counsel.

RYAN, District Judge.

The debtor, Hudson & Manhattan Corporation (H&M), has petitioned for an Order authorizing and directing it to pay an initial liquidating dividend to its shareholders of approximately $40,998,923.71. I have concluded that the entry of such an order is required by the terms of the plan of reorganization and is a step in the consummation of its provisions.

An involuntary petition for reorganization of Hudson & Manhattan Railroad Company pursuant to Chapter X of the Bankruptcy Act was filed on August 11, 1954 by three bondholders of the Debtor. Later, on December 14, 1954, this Court approved the involuntary petition and appointed a Trustee of the Debtor.

The Plan of Reorganization, confirmed by the late Judge Archie O. Dawson in 1959 (Order No. 430), provided for the amendment of the certificate of incorporation of the Debtor, changing its name to "H&M" and making it a means of accomplishing the provisions of the Plan and providing also for the vesting of the Debtor's railroad properties in a newly organized Hudson Rapid Tubes Corp. ("HRTC"), and a wholly-owned subsidiary of H&M. Both corporations, "H&M" and "HRTC", were vhicles created for carrying out the Plan of Reorganization, which provided for their liquidation and dissolution upon distribution of their net assets to stockholders.

Article IVB(3) of the Plan requires the distribution of the proceeds from the sale and liquidation of all of HRTC's assets to the stockholders of H&M.

On December 22, 1961, Judge Dawson entered an order directing consummation of the Plan by January 1, 1962 (Order No. 518). Thereafter, and on September 1, 1962, substantially all of the property of both HRTC and H&M was taken in condemnation by the Port Authority Trans-Hudson Corporation and awards later made and collected. For the property of HRTC, which essentially comprised the railroad or "tubes" holdings of the Debtor, an award was made in the principal sum of $41,000,000, together with interest thereon of $12,102,304.

In December 1968, the claim of Hudson & Manhattan Corporation for condemnation compensation for its realty holdings vested by PATH, was settled and adjusted for $11,000,000. The total cash funds available for distribution under the Plan should total approximately $63,000,000 after settlement of accounts and all adjustments are made.

I entered a Final Decree on May 19, 1965, which, inter alia, deemed the Plan substantially consummated except for the distribution. This has been delayed by questions relating to H&M's tax liabilities for past years, legal fees due con-

demnation counsel, and allocation of income and expenses as between classes of H&M stockholders. These questions now have been resolved.

By order dated May 5, 1971, I authorized and directed H&M to file an accounting not later than June 1, 1971 of its financial activities during the period January 1, 1962 up to and including December 31, 1970, and further directed that this accounting be made available for inspection at the office of H&M and in the office of the Clerk of this Court. A further order providing for the giving of notice of the filing of the accounting and for proceedings concerning hearings on objections, if any, was entered June 18, 1971.

Pending final settlement of this accounting, H&M has petitioned for permission to make an initial distribution of $40,998,923.71 to its stockholders.

■ Some few H&M stockholders have appeared to oppose this petition on the ground that such a cash distribution will have unfavorable tax consequences to them and that a merger of H&M into another business entity might entail tax benefits to some stockholders if it were qualified as a tax-free reorganization under the Internal Revenue Code. Indeed, a merger proposal made by Madison Fund, Inc. was considered by the H&M Board on May 24, 1971, but it was not adopted. This proposal was without prior approval by this Court and was not in accord with the approved Plan of Reorganization.

It is important to pause here to note some of the recitals in Order No. 518, entered by Judge Dawson on December 22, 1971, which directed consummation of the Plan.

1. A certificate of amendment to Certificate of Incorporation of the Debtor, changing the Debtor's name to Hudson & Manhattan Corporation, had been filed in New York and New Jersey (Order No. 455).

2. Hudson Rapid Tubes Corporation had been incorporated in Delaware, filed in New York and New Jersey and authorized to do business in New York and New Jersey (Order No. 455).

3. Initial directors of both corporations had been named by the Court (Order No. 452).

4. Officers of these corporations elected by initial directors had been approved by the Court (Order No. 457).

5. By-laws of these corporations were approved (Order No. 462), providing that annual meetings of stockholders were to be held the third and fourth Wednesdays of April of each year from 1962.

6. The form of indenture to secure first mortgage 6% new bonds of Hudson & Manhattan Company was approved under Trust Indenture Act of 1939, dated January 1, 1962, and Manufacturers Hanover Trust Company was named indenture trustee (Orders No. 456 and No. 518).

7. Indenture Trustee was also named paying agent and registrar for new bonds and for Class A and Class B stock (Order No. 445).

8. The form and contents of leases between the two corporations were approved (Orders No. 461 and 474).

9. Forms of certificate of new stock and of common stock of Hudson Rapid Transit Corporation were approved (Order No. 458).

10. $500,000 was found by the Court to be sufficient to provide Tubes with funds for working capital and cash requirements for two years (Order No. 518).

The Plan of Reorganization was deemed consummated as of December 31, 1961. New first mortgage 6% bonds dated January 1, 1962, due January 1, 1962, were issued, and one new bond, registered in the name of Harrigan & Co. as nominee, for $10,038,100, was delivered to the indenture trustee. One stock certificate for 590,476 shares of Class A and one certificate for 58,849 shares of Class B were issued in the

name of the exchange and distribution agent (Manufacturers Hanover Trust Company). Title to all assets of the Debtor vested in Hudson & Manhattan Corporation, subject to liens and unpaid taxes (see Order No. 430 for limitations).

I find that there is presently pending no specific merger proposal.

Those stockholders who favor merger rather than cash distribution advocate calling a meeting of stockholders for the purpose of considering alternatives to the cash distribution called for by the Plan, including merger with another business. This would do violence to the directives of the Plan and further delay payment of the initial distribution in accordance with the Plan until such time as a merger partner might be found. No proposed merger can be attempted without approval of this Reorganization Court.

Any merger, while possibly favorable to some few individual stockholders from a tax standpoint, would be an unreasonable and unwarranted departure from the Plan, as confirmed by this Court. It would require an amendment of the Plan, which now provides for a dissolution of HRTC and prompt cash distribution to the shareholders of the condemnation awards.

I hold that such an amendment to the Plan, at this time, to permit adoption of a merger proposal so inconsistent with the distribution scheme contemplated by the Plan exceeds the limited post-confirmation retained jurisdiction of this Court under Section 222 of the Bankruptcy Act. I find that such amendment would have a material and adverse effect on H&M stockholders, for it would deprive them of their right to receive immediate cash distribution and is therefore barred by Section 229.

I hold that this Court must bring this reorganization to an end and refuse to further consider or approve any amendment or modification which will further delay the distribution required by the Plan.

■ Although Section 222 of the Bankruptcy Act (11 U.S.C. § 622) permits the Court to alter or modify a plan of reorganization before or after its confirmation, it does not provide the Court with a clean slate upon which it may make alterations inconsistent with the plan itself. "The court may never under the guise of 'alteration' or 'modification' substitute an entirely new 'plan' in place of the original." Prudence-Bonds Corporation v. City Bank Farmers Trust Co., 186 F.2d 525, 528 (2d Cir., 1951, Learned Hand, J.). The Second Circuit has "repeatedly held that reservation of jurisdiction beyond what is requisite to effectuate a plan of reorganization is beyond the power of the reorganization court." Reese v. Beacon Hotel Corp., 149 F.2d 610, 611 (2d Cir., 1945). It has consistently limited post-confirmation jurisdiction to those amendments or orders which will "protect the court's decree, prevent interference with the execution of the plan or aid otherwise in its operation." In re Third Avenue Transit Corp., 216 F.Supp. 785, 787 (S.D. N.Y., 1963, Dimock, J.). See Clinton Trust Co. v. John H. Elliott Leather Co., 132 F.2d 299, 303 (2d Cir., 1942); North American Car Corp. v. Peerless Weighing & Vending Mach. Corp., 143 F.2d 938, 940 (2d Cir., 1944; Towers Hotel Corp. v. Lafayette National Bank, 148 F.2d 145, 148 (2d Cir., 1945).

Delaying distribution of the condemnation award is not in aid of the decree but contrary to it and exceeds the limits of Section 222 and the jurisdiction of this Court. In re Diversey Building Corp., 141 F.2d 65 (7th Cir., 1944); In re Inland Gas Corporation, 275 F.2d 509 (6th Cir., 1960), cert. denied *sub nom.* Vanston Bondholders Protective Committee v. Columbia Gas System Inc., 363 U.S. 813, 80 S.Ct. 1249, 4 L.Ed.2d 1154 (1960).

■ Compliance with the plan as written is particularly required when, as here, it has been approved by the Interstate Commerce Commission. In re Alton R. Co., 159 F.2d 200 (7th Cir., 1947); Denver & R. G. W. R. Co. v. Goldman,

Sachs & Co., 212 F.2d 627 (10th Cir., 1954).

The post-confirmation amendments permitted under Section 222 are limited to those which will either hasten or protect the consummation of the plan, not those which would rewrite it.

I conclude that Section 229 of the Bankruptcy Act presents an additional statutory bar to any amendment which would deprive any stockholders of an immediate cash distribution. Section 229 (c) provides, in substance, that where substantial consummation of a Chapter X plan of reorganization has taken place (Section 229(a)), *or* where an order has been entered deeming the plan substantially consummated (Section 229(b)), the plan may no longer be changed if "the proposed alteration or modification materially and adversely affects the participation provided for any class of * * * shareholders by the plan."

Any amendment delaying or preventing the H&M stockholders from receiving a cash distribution as provided for by the Plan is a change which materially and adversely affects their interest. Even if the stockholders desiring a cash distribution eventually receive their full share, the delay caused by the merger proposal suggested will place them within the class protected by Section 229, cf. In re Eldridge Brewing Co., 26 F.Supp. 920, 922 (D.N.H., 1939). See also In re American Tissue Mills, 120 F.Supp. 953 (D.Mass., 1954).

■■ Section 229 is applicable even though complete consummation has not taken place. Section 229(c) does not make *de facto* consummation the sole test, and an order pursuant to Section 229(b) (here, Order No. 554) deeming the plan to have been substantially consummated will be sufficient to bar subsequent alteration or modification of the Plan six years later.

In affirming a modification of a confirmed plan, Judge Learned Hand limited the court's authority to "a discretion which should be sparingly exercised, and which should not be exercised * * * unless the circumstances peremptorily demand it," (Prudence-Bonds Corp. v. City Bank Farmers Trust Co., supra). Even this limited authority appears terminated by the entry of the Final Decree, Butler v. Greater Pythian Temple Association of New York, 205 F.2d 621, 622 (2d Cir. 1953); Cf. In re Dilbert's Quality Supermarkets, 368 F.2d 922, 924 (2d Cir., 1966).

Those stockholders who seek to amend the Plan carry the burden of establishing that the cash distribution required by the Plan, as confirmed, is so unjust that it requires an amendment of the Plan. The "adverse" personal tax consequences of receiving cash rather than stock fall far short of meeting this burden. Reorganization Courts have consistently prohibited proposed amendments when offered at such a late date. See e. g. In re Flatbush Ave.-Nevins Street Corporation, 133 F.2d 760 (2d Cir., 1943) (prohibiting extension of voting trust); Duebler v. Sherneth Corp., 160 F.2d 472 (2d Cir., 1947) (barring late redemption of securities); In re Elless Co., 174 F.2d 925 (6th Cir., 1949), cert. denied *sub nom.* Blair v. Finan, 338 U.S. 824, 70 S.Ct. 70, 94 L.Ed. 500 (1949) (prohibiting extension voting trust); Delaware and Hudson Co. v. New York, N. H. & H. R. R. Co., 227 F.2d 291 (2d Cir., 1955), cert. denied 350 U.S. 987, 76 S.Ct. 473, 100 L.Ed. 854 (1956) (refusing reconsideration of disallowed claim); In re Inland Gas Corporation, 275 F.2d 509 (6th Cir., 1960), cert. denied *sub nom.* Vanston Bondholders Protective Committee v. Columbia Gas Systems Inc., 363 U.S. 813, 80 S.Ct. 1249, 4 L.Ed.2d 1154 (1960) (refusing changes in capitalization and priority); In re Third Avenue Transit Corp., 216 F.Supp. 785 (S.D. N.Y., 1963) (refusing avoidance of pension plan); Cf. In re Pittsburgh Terminal Coal Corp., 183 F.2d 520 (3d Cir., 1950), cert. denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950) (reorganization court properly enjoined shareholders' meeting of Chapter X corporation called to consider extension of corporate existence beyond liquidation date set by plan).

All the parties to this reorganization have proceeded upon the assumption that the assets of HRTC would be liquidated and distributed to the H&M stockholders. This assumption became an integral part of the Plan and has been relied upon by the H&M stockholders, who have long awaited this distribution, which is to be followed by the further liquidation of H&M. With the purposes of the Plan so well understood, the Court may properly deny a belated attempt to frustrate the basic purpose of the Plan. In re North Atlantic and Gulf Steamship Company, 252 F.Supp. 724, 729–730 (S.D. N.Y., 1966, Bryan, J.), aff'd 369 F.2d 405 (2d Cir., 1966); In re American Tissue Mills, 120 F.Supp. 953, 954 (D. Mass., 1954).

This Court should not be used to thwart the just expectations of H&M stockholders and to deny them this long-awaited liquidation. The Plan shall remain as it was written, confirmed, and acted upon, by prohibiting any amendment delaying the contemplated distribution and complete liquidation.

An appropriate order has been signed and filed.