In the Matter of Donald Arthur **POWELSON** and Mary Margie Powelson, Debtors.

Appeal of James M. **MORE**, Trustee.

No. 88–1423.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1988.
Decided June 21, 1989.

---

Ward W. Miller, Bloom Bloom More & Miller, Fort Wayne, Ind., for appellant.

William L. Needler, James C. Truax, Frank E. Stepnowski, Chicago, Ill., for appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

CUDAHY, Circuit Judge.

This appeal involves the metamorphic role assigned to district courts by the

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

Bankruptcy Act Amendments, 28 U.S.C. §§ 157, 158 (Supp.1988), which accord both original and appellate jurisdiction to district courts sitting in bankruptcy proceedings. Trustee James M. More, on behalf of the unsecured creditors' committee, appeals the district court's order that withdrew the reference of this case to the bankruptcy court, stayed enforcement of the bankruptcy court's liquidation confirmation order, stayed the debtors' appeal of that order and substituted an interim plan. The order is innovative and, as far as we know, unprecedented, presenting unique problems on appeal.

## I.

In January 1986, the Powelsons (the "Debtors"), who are farmers, petitioned for relief under Chapter 11 of the Bankruptcy Code. On June 5, 1986, following the exclusive period that a debtor is accorded under 11 U.S.C. section 1121(b) to file a disclosure statement and reorganization plan, the unsecured creditors' committee (the "Creditors") submitted their own disclosure statement and liquidation plan. During the next year and a half, the Debtors failed to file a complete disclosure statement and acceptable reorganization plan. Consequently, on November 6, 1987, the bankruptcy court entered an order confirming the Creditors' liquidation plan. The plan provided, *inter alia*, for the removal of the Debtors from possession of their farm and for the appointment of James M. More as the trustee responsible for carrying out the terms of the plan. The Debtors filed a motion to reconsider the confirmation order and a motion to convert to Chapter 12, both of which the bankruptcy court denied. Thereafter, on February 19, 1988, the Debtors filed a notice of appeal to the district court, appealing the bankruptcy court's denial of their motion to reconsider and their motion to convert to Chapter 12, as well as the confirmation order of November 6, 1987.

On the same date, the Debtors filed an amended motion for an emergency withdrawal of the reference of the case to the bankruptcy court and for a temporary stay pending hearing. This motion implored the district court to withdraw the reference in order to prevent the Debtors from being immediately evicted from their farm pursuant to a writ of assistance ordered by the bankruptcy judge. The Debtors claimed that the liquidation plan was improperly forced upon them notwithstanding their status as farmers, who allegedly cannot be involuntarily liquidated under the Bankruptcy Code, and despite their apparent financial capacity to pay their creditors in full. During a hearing on February 26, 1988, the district court inquired into the appropriateness of liquidation in this case. The Creditors conceded that, because the farmland was appraised at approximately $350,000 while the Creditors' claims were estimated at only $237,000, the excess cash proceeds after liquidation would be returned to the Debtors. *See* Tr. at 15–17. Noting that, under these circumstances, liquidation seemed contrary to the objectives of the Bankruptcy Code, the district judge then urged the parties to negotiate a more equitable agreement which would keep the Debtors in possession while protecting the Creditors' interests. *See* Tr. at 28. When the parties appeared unable to reach an agreement after the lunch recess, the judge admonished the lawyers, stating, "I for the life of me can't understand why this matter can't be resolved by agreement; but if it can't, I'll decide it." Tr. at 47. Following this exhortation, the court ordered another short recess.

Thereafter, the Debtors submitted a draft order which the court ultimately adopted with minor modifications. The court then entered its order withdrawing the reference of the case, and, in accordance with the new plan, restored the Debtors to possession of their farm, stayed enforcement of the Creditors' confirmed liquidation plan and stayed the pending appeal. The substituted plan specifically provided a method for the Debtors to fully satisfy their indebtedness over a four-year period. The plan also created a continuing lien on the Debtors' property as security for the Creditors' claims. From this somewhat extraordinary order, the trustee, on behalf of the Creditors, has appealed to this court.

## II.

This case, with its unusual procedural background, initially presents a puzzling jurisdictional issue: whether the district court's order in this bankruptcy proceeding is an appealable final order over which we can exercise appellate jurisdiction. Resolution of this difficult prefatory question does not end our quandary, however. For even if there is a basis for jurisdiction, the further question arises whether we should exercise it at this stage to review the Creditors' objections to the district court's order, which they apparently consented to after negotiation. With these problems in mind, we begin our jurisdictional analysis by examining the elusive provisions of the recent Bankruptcy Act Amendments.

■ The Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), invalidated the 1978 Bankruptcy Reform Act's broad jurisdictional grant of authority to non-Article III bankruptcy judges. Thereafter, the Bankruptcy Act was amended to provide that district courts exercise original jurisdiction in bankruptcy actions, but may automatically refer these matters to bankruptcy courts. *See* 28 U.S.C. § 157.[1] Such referrals do not completely divest the district court of its original jurisdiction, however, for section 157(d) of the amended Bankruptcy Act provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Because courts rarely in-

voke this discretionary power, there is a paucity of judicial opinions construing this provision.[2] Yet the few decisions addressing appellate review of withdrawn cases have generally concluded that a decision to withdraw a reference or to refuse such a withdrawal is interlocutory and non-reviewable. *See, e.g., In re Moens,* 800 F.2d 173, 175 (7th Cir.1986); *see also In re Chateaugay Corp.,* 826 F.2d 1177 (2d Cir.1987); *In re King Memorial Hospital, Inc.,* 767 F.2d 1508, 1510 (11th Cir.1985); *In re Kemble,* 776 F.2d 802, 805–06 (9th Cir.1985); *In re Dalton,* 733 F.2d 710 (10th Cir.1984) (reviewable only after final judgment or by writ of mandamus), *cert. dismissed,* 469 U.S. 1185, 105 S.Ct. 947, 83 L.Ed.2d 959 (1985). Accordingly, a district court's discretionary decision to withdraw a case is generally not reviewable until a final order is subsequently entered.

■ Assuming this general principle of non-reviewability applies here, our jurisdiction to review this withdrawn case depends on whether the district court's order staying the bankruptcy proceedings and substituting an interim plan is "final" under the appropriate jurisdictional statute. The parties disagree about whether the relevant statute is the general provision for appellate jurisdiction, 28 U.S.C. section 1291, or 28 U.S.C. section 158(d) of the amended Bankruptcy Act. Several courts and commentators have concluded that, when the district court has withdrawn a reference and is acting as a court of original jurisdiction, the general appellate procedures of 28 U.S.C. section 1291, rather than section 158(d) of the Bankruptcy Act, govern ap-

---

**1.** The Bankruptcy Amendments permit bankruptcy judges to enter orders and judgments in all "core proceedings" arising under title 11, subject to appellate review under section 158 of the Amendments. *See* 28 U.S.C. § 157(b). In non-core proceedings that are "otherwise related to a case under title 11," bankruptcy judges may submit proposed factual findings and conclusions of law to the district court, which after consideration is directed to enter a final order or judgment. *See* 28 U.S.C. § 157(c)(1). In the present case, the bankruptcy court's confirmation of the Creditors' liquidation plan was a "core proceeding" subject to appellate review by the district court under section 158(a). *See* 28 U.S.C. § 157(b)(2)(L).

**2.** By contrast, there is a fair abundance of case law interpreting the mandatory provision of section 157(d) which states: "The district court *shall,* on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis supplied). The district court in this case did not rely on this mandatory provision; hence, the related interpretive case law offers minimal guidance in this appeal.

peals from its actions. *See In re Benny*, 791 F.2d 712, 717 (9th Cir.1986) (collecting cases); *In re Manoa Finance Co.*, 781 F.2d 1370 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985); *Green v. Drexler*, 760 F.2d 406 (2d Cir.1985); 1 *Collier on Bankruptcy* ¶ 3.03[6][a], at 3–171–3–172 & n. 32 (15th ed. 1987); 1 *Norton Bankr. L. & Prac.* § 5.35 (1987). This conclusion seems correct since section 158(d) refers only to appeals from judgments and orders entered under sections 158(a) and (b),[3] neither of which pertains to withdrawn proceedings. *See id.* Because the district court withdrew the reference in this case, thereby exercising its original jurisdiction, the appropriate basis, if any, for appeal to this court must be section 1291.[4]

■ Nevertheless, since this appeal arises in a bankruptcy context, we should interpret the "finality" standards governing the availability of appellate review under section 1291 more flexibly than is generally the case. *See In re Amatex Corp.*, 755 F.2d at 1039; *cf. In the Matter of UNR Indus., Inc.*, 725 F.2d 1111, 1115 (7th Cir. 1984) ("while 'finality,' interpreted functionally, might mean something different in a bankruptcy case from what it does in other cases, section 1291 is flexible enough

to be applied differently depending on circumstances").[5] We have indicated on a number of occasions that " '[f]inal' is interpreted more liberally in bankruptcy cases than in other federal cases." *In the Matter of Childress*, 851 F.2d 926, 928 (7th Cir.1988). *See also In re Sax*, 796 F.2d 994, 996 (7th Cir.1986); *In re Goldblatt Bros., Inc.*, 758 F.2d 1248, 1251 (7th Cir. 1985). The rationale for this greater flexibility derives from the uniqueness of the bankruptcy process, involving, as it does, successive procedural stages, and "many claims and problems, each of which may come to a final conclusion before the estate has been wrapped up." *In the Matter of Morse Elec. Co., Inc.*, 805 F.2d 262, 264 (7th Cir.1986).

The Creditors assert that the finality of the district court's order arises from the stay of the confirmation order conjoined with the stay of the Debtors' appeal of that order. They argue that because the appeal was "indefinitely shelved," the court, in essence, reversed the bankruptcy court and substituted a new plan, thereby creating a final order.[6]

The Debtors, on the other hand, contend that the stay provisions and interim relief ordered by the district court merely hold the other proceedings in abeyance until further notice, pending the Debtors' effort to

---

**3.** Section 158(d) provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." 28 U.S.C. § 158(d). Subsections (a) and (b) state in relevant part:

  (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.
  (b)(1) The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.
28 U.S.C. §§ 158(a), (b).

**4.** In *In the Matter of Morse Electric Co., Inc.*, 805 F.2d 262 (7th Cir.1986), this court stated that "Section 1291 is the wrong statute in bankruptcy cases—at least as a rule, and we need not consider whether there are exceptions." *Id.* at 263.

Because the district court in that case had exercised its appellate jurisdiction under section 158(a), the applicable jurisdictional section for purposes of review by this court was necessarily section 158(d). In the present case, however, involving an appeal from a withdrawn case in which the district court exercised its original jurisdiction, we believe that the language of section 158 precludes application of the rule of *Morse Electric*.

**5.** The Ninth Circuit, on the other hand, has held that the liberalized rules of finality for bankruptcy appeals do not apply to appeals pursuant to section 1291; instead, finality is assessed under the collateral order doctrine. *See Matter of Hawaii Corp.*, 796 F.2d 1139, 1142 & n. 1 (9th Cir.1986).

**6.** Alternatively, the Creditors characterize the court's disposition as a pretext for revoking the confirmed plan, which is authorized only upon a showing of fraud. *See* 11 U.S.C. § 1144.

satisfy their creditors over a reasonable period. Because the stay can be revoked at any time, thereby reactivating the appeal from the bankruptcy court to the district court, the Debtors maintain that the district court's order is not final, but remains interlocutory.[7]

■ We are not persuaded by the Creditors' argument that the court's indefinite stay order and grant of interim relief is a final order for purposes of appellate review. When the district court withdrew the reference, it did not dismiss the bankruptcy proceedings and the related appeal, but merely stayed them. Stay orders, of course, generally do not finally determine any rights or liabilities or end the litigation even under liberal bankruptcy standards. *See, e.g., In re Tirenational Corp.*, 54 B.R. 118 (Bankr.N.D. Ohio 1985). The district court's order is not "final in the sense that it completes litigation of the question[,] ... [n]othing more need be done by the district court or the bankruptcy court on the matter ... and the order of the district court ends this particular controversy between the debtors and creditors." *In re Comer*, 716 F.2d 168, 172 (7th Cir.1983). The interim order provides a mechanism for closely monitoring the Debtors' compliance with its terms, requiring monthly reports to be filed with the court. Presumably, then, if the Debtors fail to comply fully with the schedule set by the interim order for paying off their debts, the district court (upon motion by the Creditors) would promptly lift the stays and proceed to hear the appeal from the original confirmation order of liquidation. Of course, much would be left to the future discretion of the district court.

■ Alternatively, the Creditors rely on the "collateral order" doctrine as a basis for invoking this court's appellate jurisdiction. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). According to this doctrine, an order may be immediately appealed if it, at a minimum, satisfies three conditions: "It must 'conclusively determine the disputed question,' 'resolve an important issue completely separate from the merits of the action,' and 'be effectively unreviewable on appeal from a final judgment.'" *In re Moens*, 800 F.2d at 176 (quoting *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 431, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985)). The doctrine is inapplicable here, however, because the district court's order is plainly not "collateral," *i.e.*, completely separate from the merits. Nor have the Creditors demonstrated that the order is "effectively unreviewable" thereby "affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Id. See also In the Matter of Riggsby*, 745 F.2d 1153, 1157 (7th Cir.1984).

■ We therefore conclude, at least tentatively, that the district court's order is not final and appealable. But this conclusion does not necessarily foreclose our review of this unusual order. Rather, because the order may undermine the purposes and prescribed procedures of the Bankruptcy Act, we shall treat the Creditors' petition as a request for a writ of mandamus directing the district court to decide the appeal of the confirmation order. *Cf. In re Dalton*, 733 F.2d 710 (10th Cir. 1984). Our issuance of a writ of mandamus would, of course, require that the district court have a clear obligation to hear the appeal now rather than to proceed by withdrawal of the reference. *See Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953); *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (writ traditionally used "to confine an infe-

---

7. The Debtors cite *In the Matter of Riggsby*, 745 F.2d 1153 (7th Cir.1984), as authority for their position. In *Riggsby*, we held that a district court's decision reversing a bankruptcy court's dismissal of a complaint, and remanding the case to the bankruptcy court, was an interlocutory order and thus not appealable under section 158(d). Yet *Riggsby* does not necessarily control the question of section 1291 appellate jurisdiction presented in the instant case, in which the district court did not remand the proceedings to the bankruptcy court but, instead, "indefinitely shelved" the appeal and substituted an alternative plan consistent with its own views of equity.

rior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so"). Whether the district court had a mandatory obligation to hear the appeal once it was filed is not clear and indisputable from the language of the Bankruptcy Act. Moreover, if the Creditors agreed to the order withdrawing the reference (as they apparently have), their consent may have obviated any duty the district court may have had to proceed exclusively in an appellate posture. Hence, the Creditors' consent may very well preclude mandamus relief.

■ Thus, in order to grant mandamus relief, we must, *inter alia*, resolve the fundamental question whether the district court may indefinitely postpone an appeal from the bankruptcy court and pursue the matter under consideration as one of original jurisdiction. Here the district court has, in effect, derailed the appellate process provided by statute. But the statute authorizing withdrawal of a reference does not expressly prohibit withdrawal even after an appeal has been filed. Section 157(d) simply states: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Timeliness appears to be a constraint on motions by the *parties* but not a limitation on the *court*. Indeed, there is no case authority construing this discretionary language to provide any clear temporal limits on the district courts' power of withdrawal. Courts adverting to the legislative history of section 157(d) have noted that the " 'district court thus retains full power to withdraw or limit the reference of a bankruptcy case or proceeding ... *at any time....*' " *In re White Motor Corp.*, 42 B.R. 693, 699 (N.D. Ohio 1984) (citing S.Rep. No. 55, 98th Cong., 1st Sess. 16,

which discusses proposed language similar to that ultimately enacted under § 157(d)).[8] In *In re Dalton*, 733 F.2d 710 (10th Cir. 1984), the government had already filed in the district court an appeal of a bankruptcy court's turnover order when the district court withdrew the reference and then ordered a change of venue to another district. The debtor appealed the order withdrawing the reference and transferring venue, arguing that immediate review was necessary to preserve the pending appeal and that "a party's appellate routes cannot be so easily destroyed and [the court of appeals'] appellate jurisdiction avoided by simply changing venue...." *Id.* at 716–17. The Tenth Circuit rejected these arguments, holding that the district court's order was interlocutory and neither appealable nor a proper subject of mandamus relief. *Id.*

Other authorities have read a more demanding requirement of timeliness into the provisions for withdrawal of the reference. For example, in *In re Baldwin–United Corp.*, 57 B.R. 751 (Bankr.S.D. Ohio 1985), the court held that a motion for a *mandatory* withdrawal, *see supra* note 2, is timely if made as promptly as possible in light of the developments in the bankruptcy proceedings. In a chapter 11 reorganization context, the *Baldwin* court maintained that the timeliness determination would turn in part on whether a reorganization plan and disclosure statement had already been prepared or approved. *Id.* at 753. Accordingly, the court in *Baldwin* held that the withdrawal motion was not timely since the proposed plan for reorganization had already been filed and the related disclosure statement had already been approved. *Id.* at 754. *See also Furness v. Lilienfield*, 35 B.R. 1006 (D.Md.1983); *In re Giorgio*, 50 B.R. 327, 328–29 (D.R.I.1985). With respect to withdrawals *sua sponte, Collier's* states that "the district court would be unlikely to find cause to withdraw the reference at a late stage in a civil proceeding,

---

**8.** In *In re White Motor Corp.*, after the bankruptcy court had confirmed the debtor's reorganization plan, the creditors filed a motion for a mandatory partial withdrawal of reference, seeking removal of two claims—a priority claim and a claim for pension benefits owed under a guarantee letter agreement. 42 B.R. at 694.

Without discussing the propriety of partially withdrawing a reference after confirmation, the court concluded that a motion filed eight days after the enactment of section 157(d) was sufficiently timely. *Id.* at 701–02. (Nonetheless, the court denied the motion.)

*e.g.,* when trial is a short time away." 1 *Collier on Bankruptcy* ¶ 3.01[2][e]. Thus, although the only express direction is to the parties, there certainly are suggestions that a post-appeal withdrawal of the reference by the district court is disfavored. *Cf. Carlton v. Baww, Inc.,* 751 F.2d 781, 788 & n. 10 (5th Cir.1985) (implying that, after the bankruptcy court finally disposes of a core proceeding, the district court may proceed only under its *appellate* jurisdiction). The timing of the court's withdrawal of the reference here, even if not improper, seems to be in conflict with the statutory objectives of utilizing the expertise of bankruptcy judges, reducing forum shopping and preserving the appellate processes provided by the Bankruptcy Act. *Cf. In re White Motor Corp.,* 42 B.R. at 704–05.

In addition to the timeliness question, the district court's actions may present other problems. First, the court withdrew the reference without articulating any "cause" justifying its action.[9] Nor did the court discuss the requisite standards for staying the pending proceedings, *see In re Baldwin–United Corp.,* 45 B.R. 385 (Bankr.S.D. Ohio 1984), or explain the reasons for substituting an entirely new plan rather than reviewing the Debtors' appeal of the originally confirmed plan in the normal appellate course. Apparently, the court believed that the confirmation order was inequitable and that the Debtors were entirely capable of discharging their indebtedness without taking the drastic step of liquidating their farm. Bankruptcy is a branch of equity and we have no desire to unduly limit the application of equitable principles. In addition, we are aware of the statutory purpose to avoid liquidating debtors—particularly farmers. But, of course, these concerns in themselves do not justify the imposition of

a judge's personal notions of equity to disrupt the appointed course of bankruptcy proceedings. The Supreme Court has recently announced that "it is up to the creditors—not the courts—to accept or reject a reorganization plan...." *Norwest Bank v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). *See also Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 791 F.2d 524, 528 (7th Cir.1986) (court in equity does not have "free floating discretion to redistribute rights in accordance with his personal views of justice and fairness"); *Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987) (court's equitable powers are not a "license to disregard the clear language and meaning of the bankruptcy statute"), *cert. denied,* — U.S. —, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988). *Cf. In re Chain Inv. Co.,* 102 F.2d 323, 324 (7th Cir.1939) (district court, on its own initiative, may suggest modifications in reorganization plan, but if materially adverse to creditors, necessary percentage of creditors must approve); *In re Hudson & Manhattan R.R. Co.,* 332 F.Supp. 718, 721 (S.D.N.Y.1971) (court may never, under guise of alteration or modification, substitute an entirely new plan in place of original).

We think that, if consent were not in the picture here, it would be clearly wrong for the district court to suspend the mandated appeal process as it has done in this case. Although the statute does not expressly forbid the course taken here, it appears to violate the intent of Congress as reflected in the statutory scheme. We do not see how a district court can simply abort an appeal, reject a confirmed plan and substitute an alternative "more equitable" plan

**9.** *Collier's* states that:

The only circuit court speaking to the issue has held that, in determining whether cause exists for withdrawing the reference, the court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, conservation of debtors' and creditors' resources, expediting the bankruptcy process, and whether the bankruptcy court can hold a jury trial....

1 *Collier on Bankruptcy* ¶ 3.01, at 3–60 & n. 111 (citing *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir.1985)). Presumably, the district court believed that the prospect of the Debtors' immediate eviction from their farm constituted cause, but the record is equivocal on this issue. At one point during the hearing on February 26, the Debtors suggested that tax liability issues unresolved by the confirmed plan might constitute "cause" for withdrawal of the reference. *See* Tr. at 6. But the district court never addressed this question.

while leaving the appeal in limbo for an indefinite period.

■ But the Debtors make the somewhat plausible argument that the court did not abuse its equitable powers by substituting an alternative plan because the Creditors agreed to this arrangement. A review of the record suggests, but does not conclusively demonstrate, that the parties negotiated and ultimately agreed to the alternative, interim plan adopted by the court.[10] Evidently, the Debtors and the court believed that the Creditors agreed to this order, including the provisions for staying the pending proceedings. As we read the record, the Creditors did not make clear and consistent objections to the new plan or to the stay provisions, nor did they file a motion to reconsider with the district court. Moreover, the Creditors did not object to the court's arguably untimely withdrawal of the reference after the confirmation order was entered and the related appeal was filed.[11] Therefore, the Debtors claim that the Creditors should not be permitted to raise their various belated objections on appeal. The Creditors, of course, now deny that they ever consented to the unusual procedures in the district court.

As we have indicated, we are very much concerned that the district court has departed from the statutory scheme of proceeding in its appellate capacity once a plan has been confirmed and an appeal has been filed. Nevertheless, in view of the Creditors' ostensible acquiescence in the procedures adopted in the district court, we think it premature to decide the questions upon which a writ of mandamus would be based. Instead, resolution of this case requires further illumination of the record with respect particularly to the issue of consent. We therefore direct the district court to clarify this matter and to make factual findings regarding the Creditors' alleged consent to the interim plan adopted by the district court and any related issues which the district court deems relevant.[12] In order to avoid further delay in the resolution of this three-year-old bankruptcy dispute, we urge the district court to expedite its handling of this matter.

III.

■ For the reasons discussed, we direct the district court to make findings and to provide clarification as required by this opinion.[13]

IT IS SO ORDERED.

WILL, Senior District Judge, concurring.

I concur in the remand for a finding as to whether or not the creditors consented to the procedure and order of the district judge and thereby waived their right to a ruling on the appeal from the bankruptcy judge's confirmation of the Chapter 11 plan. While the majority opinion implies that, absent such a waiver, the district court's procedure was erroneous, given the

10. The district judge importuned the parties to negotiate a more equitable agreement that permitted the Debtors to remain in possession of their farm. *See* Tr. at 28. After two recesses, the Debtors submitted a draft order purporting to be an agreement reached by both parties, which the court eventually adopted. *See* Tr. at 47.

11. To the contrary, the Creditors conceded the district court's authority to withdraw the reference at that stage. *See* Tr. at 14.

12. The district court should make the requested factual findings with respect to consent and related issues, as well as a preliminary determination whether the Creditors waived their right to appeal this case. However, the ultimate legal question of such a waiver is, of course, for us to decide.

13. The Debtors also raise an unusual argument that the trustee, More, has no standing to bring this appeal. Citing *Commodities Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), they suggest that prosecution of this appeal on behalf of the Creditors is inherently a breach of fiduciary duty owed to the estate. Yet *Weintraub* does not stand for such a proposition. *See id.* at 355, 105 S.Ct. at 1994 (recognizing that, although a trustee's fiduciary duty runs to all parties, the hierarchy of interests in bankruptcy may result in the subordination of shareholders' interests to those of creditors). In addition, the Debtors contend that the election of More as trustee was improper. Since the Debtors failed to present this objection either to the bankruptcy court or to the district court, we cannot consider it now.

pending appeal, the fact that a final order approving a plan had been entered and that the district judge made no findings as to "timeliness" or "cause" justifying the withdrawal of reference, I would hold explicitly that, unless the creditors consented and waived, the procedure adopted by the district court was improper under 28 U.S.C. § 157(d). Once a plan has been approved by a bankruptcy judge, unless there are extraordinary circumstances, I believe the Bankruptcy Act contemplates an appeal from that approval and not a withdrawal and substitution by the district judge of a de novo plan while ostensibly staying the appeal. In this case, the stay will become permanent and the appeal moot if the Debtors do not default. If they do default, the plan approved by the bankruptcy judge will probably also be moot. In any event, I agree that expeditious handling of the remand is crucial.